No. 89-313

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

IN RE THE MARRIAGE OF
PHYLLIS T. BARNARD,

        Petitioner and Respondent,

    and

RODNEY D.A. BARNARD,

        Respondent and Appellant.

APPEAL FROM:  District Court of the Eighth Judicial District,
              In and for the County of Cascade,
              The Honorable John McCarvel, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Rodney D.A. Barnard, pro se, Great Falls, Montana

    For Respondent:

        Michael L. Fanning; Scott & Tokerud, Great Falls,
        Montana

Submitted on Briefs: Dec. 7, 1989

Decided: January 23, 1990

Filed:

_____
                  Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

The parties' marriage was dissolved in the District Court for the Eighth Judicial District, Cascade County, in April 1989. Rodney D. A. Barnard (Rod), appearing pro se, appeals. We affirm in part as modified, and remand in part.

The issues are:

1. Did the District Court err in determining that the shares of stock in the Tadej farm were not a part of the marital estate?

2. Did the court abuse its discretion in its division of property?

3. Did the court err in its award of child support?

4. Did the court err in awarding maintenance?

5. Did the court exceed its authority by ordering Rod to pay Phyllis's attorney fees and accountant's fee?

Rod and Phyllis were married in 1968. Two children were born of the marriage, one of whom had reached the age of majority prior to this dissolution and the other of whom attained the age of majority on November 20, 1989. During most of the marriage, the parties lived on Phyllis's family's farm (the Tadej farm) near Geraldine, Montana, where Rod took care of the hog operation and Phyllis worked as a homemaker and part-time ranch hand. Prior to the dissolution, Rod went to truck driving school and obtained a long-haul truck driving job out of Great Falls, Montana.

The court found that personal property in the marital estate, valued at $37,185, had been divided by the parties. It awarded additional personal property valued at about $1,380 to Rod. It awarded a paid-up life insurance policy on Phyllis, valued at $2,152.78, to Phyllis to be held for the minor daughter's benefit. The court found that stock in the Tadej farm which had been gifted to Phyllis was not part of the marital estate.

The court further required Rod to pay Phyllis $200 per month for current child support and $200 per month on back child support retroactive to the date of the parties' separation on November 4, 1986. It ordered Rod to pay Phyllis maintenance of $200 per month for three years and to pay her attorney fees of $5,000 and accountant fees of $500.

I

Did the District Court err in determining that the shares of stock in the Tadej farm were not a part of the marital estate?

Rod maintains that he is entitled to a share of the Tadej farm corporation for his years of work there. In the alternative, he claims $30,000 as equity in the Tadej Ranch Company for housing from 1973 to 1986. He believes that because housing was credited as part of his earnings while he worked for the farm, he should have equity in the house.

The District Court found that from 1973 until near the end of the marriage, Rod worked on the Tadej farm. It found that, as an

3

estate planning device, beginning in 1968, Phyllis's parents gifted shares of stock in the farm to their five children. It found that Phyllis was given almost one-half of her shares of stock before the parties moved back to the farm to work. It found that all of the shares of stock are in Phyllis's name and that at the time of trial she held title to 7.1 percent of the outstanding shares in the corporation. The court found:

> It is clear that the Tadejs' gifts of stock to their children were not to compensate them and their spouses for work on the ranch. These gifts represent the Tadejs' children's inheritances and will only have value after both Mr. and Mrs. Tadej die. The Court finds that these shares of stock are not part of the marital estate and are not divisible in this proceeding.

The court further found that there was no agreement between Rod and the farm that he would be compensated by stock in the corporation but that, instead, his salary, including numerous fringe benefits, was set annually at corporate meetings and was in line with the prevailing wage for farm and ranch workers.

A District Court is not required to include gift property given to one spouse during a marriage as part of the marital estate. Becker v. Becker (1985), 218 Mont. 229, 232, 707 P.2d 526, 528. For example, such gift property need not be included where none of the value of the property is a product of contribution from the marital effort. Becker, 707 P.2d at 528.

4

Here, the situation is somewhat different. Rod argues that the value of the stock in the farm increased due to his efforts in working on the farm. This may be true. However, Rod was paid a salary and benefits for his work, and he admitted at trial that there was no agreement that he would receive stock in the corporation as compensation. Additionally, the fact that Phyllis's siblings who did not work on the ranch were given the same amount of stock as was Phyllis indicates that the stock was a gift, not payment for work done. We hold that the District Court did not err in ruling that the stock in the Tadej farm was not a part of the marital estate.

Rod also argues that he was promised a salary equal to that which he had made working for cable TV and that his wage was reduced below that amount after he had worked for the farm for several years. But the record shows that his salary was set yearly at corporate meetings, which he attended, and he admitted at trial that he did not object to the salary he was paid. There is no record of any agreement that he would acquire equity in the house, which was owned by the corporation. We hold that there was no error in the absence of an award to Rod of equity in the corporation's house.

## II

Did the court abuse its discretion in its division of property?

5

Rod argues that he should have been awarded $3,000 in promissory notes from Phyllis's father because they were made out to him. He also argues that he should be credited for a .243 caliber rifle awarded to him but which Phyllis sold to pay for their daughter's glasses.

In reviewing a property distribution, this Court will not disturb the district court's division unless there has been a clear abuse of discretion. In re Marriage of Hall (1987), 228 Mont. 36, 39, 740 P.2d 684, 686. The notes about which Rod complains, while made to Rod, were for a loan made to the Tadej farm during the marriage. In reviewing the District Court's findings, we see that it awarded property valued at $16,150 to Phyllis (including the notes) and property valued at $22,415 to Rod. The findings show that the District Court was aware that the .243 rifle had been sold. In light of all the factors which must be considered under § 40-4-202, MCA, in property distributions, including the parties' age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs, we hold there was no abuse of discretion.

### III

Did the court err in its award of child support?

Rod argues that he should not be required to pay back support because his daughter is living with Phyllis's parents, "it appears

6

all her needs are being met," and Phyllis is putting the support money into an account in the daughter's name at D. A. Davidson.

Our standard of review of child support awards is whether the district court had clearly abused its discretion. In re Marriage of Benner (1985), 219 Mont. 188, 192, 711 P.2d 802, 804. This Court has further stated that a district court has jurisdiction to award child support retroactive to the time of separation of the parties. In re Marriage of DiPasquale (1986), 220 Mont. 497, 499, 716 P.2d 223, 225. The controlling statute, § 40-4-204, MCA, says that the amount of child support shall be an amount reasonable or necessary for the child's support. The statute requires, at § 40-4-204(2)(b), MCA, that the district court consider the child's financial resources. This was done in Finding XII, which noted the daughter's money market account at D. A. Davidson. The statute also refers to the uniform child support guidelines under which $200 per month in support payments with $25,000 per year income is quite low. We conclude that even if the daughter's needs are being met by her grandparents, the District Court awarded a reasonable amount of child support and acted within its discretion.

Rod also argues that the date set by the court as the date of the parties' separation is wrong. The court set the date of separation as November 4, 1986. Phyllis testified that they separated in November 1986. We conclude this is substantial evidence to support that finding.

7

Rod raises one other matter under this issue. He asks who may claim his daughter as an income tax deduction for 1989. The District Court ruled that Rod could claim her for the year 1988, but it made no ruling for 1989. Rod's support obligation ended in November 1989 when his daughter reached the age of eighteen. We hold that, provided he made his support payments in 1989, Rod shall be entitled to claim his daughter as an income tax deduction for that year. The parties and the court shall execute whatever documents are necessary so that Rod may claim the exemption for 1989 if his contributions complied with federal regulations.

## IV

Did the court err in awarding maintenance?

Rod argues that he should not be required to pay maintenance because Phyllis was at fault in the breakup of this marriage.

The standard for awards of maintenance in the State of Montana is established by statute at § 40-4-203, MCA. The statute sets out factors which a court must consider in determining whether and in what amount to award maintenance. Under § 40-4-203(2), MCA, marital misconduct is not a factor to be considered in setting maintenance.

The District Court found that Phyllis's education and work experience left her, at thirty-nine years of age, with no marketable job skills and little possibility of obtaining secure employment. It found that after the parties' separation, Rod attended

8

truck driving school and that he had a secure job at the time of trial. It found his salary at the time of trial to be over $25,000 per year. As described above under Issue II, the parties did not have extensive assets. Rod contends that his gross income for 1989 is likely to be only $15,918. However, his 1989 income was not in evidence at trial. The District Court's findings are supported in the trial record. We conclude that the court did not err in awarding Phyllis $200 per month for three years in maintenance.

## V

Did the court exceed its authority by ordering Rod to pay Phyllis's attorney fees and accountant fee?

The District Court found that "[b]ecause of the parties very limited assets and the completely unfounded claim of Rod in the Tadej's corporate assets he has caused Phyllis to incur $5,000 in attorney fees and $500.00 in accountants fees which he should be required to pay."

Section 40-4-110, MCA, provides:

> Costs -- attorney's fees. The court from time to time, after considering the financial resources of both parties, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under chapters 1 and 4 of this title and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment. The court may order that the amount be paid directly to the attorney, who may enforce the order in his name.

9

This Court has held that an award of attorney fees under this statute must be based on necessity, must be reasonable, and must be based on competent evidence. "Reasonableness is shown by means of a hearing allowing for oral testimony, the introduction of exhibits, and the opportunity to cross-examine. . . The award will not be disturbed by this Court if it is supported by substantial evidence." Wilson v. Bean (Mont. 1981), 628 P.2d 287, 289, 38 St.Rep. 751, 752. There is nothing at all in the record of this case to support the amount of either the attorney fees or the accountant fees. We therefore remand the award of these fees for a hearing on attorney and accountant fees. Rod shall not be required to pay Phyllis's attorney fees for this hearing. See In re Marriage of Bliss (1980), 187 Mont. 331, 336, 609 P.2d 1209, 1213.

Affirmed in part as modified, and remanded in part.


Chief Justice

We concur:

_John Conway Harrison_

_Diane G. Barz_

_William E. Hunter_

_R. C. McDonough_
Justices

11