NO. 94-022

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

IN RE THE MARRIAGE OF

SANDY J. MALQUIST,

    Petitioner/Respondent,

    and

DALE H. MALQUIST,

       Respondent/Appellant.

FILED

SEP 20 1994

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

         Dale H. Malquist, Lincoln, Montana (pro se)

      For Respondent:

         Donald A. Garrity, Helena, Montana

      For Amicus:

         Daniel Minnis, Montana Legal Services, Helena, Montana

               Submitted on Briefs:  July 12, 1994

                         Decided:  September 20, 1994

Filed:

                           Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Dale Malquist (Dale) appeals from the Findings of Fact, Conclusions of Law and Order entered by First Judicial District court, Lewis and Clark County on November 15, 1993. The order awarded Sandy Malquist (Sandy) a judgment in the amount of $2,429.74, and attorney fees in the amount of $300. The order also denied Dale's motion for sanctions. We affirm in part and remand for further proceedings consistent with this opinion.

Dale raises four issues on appeal:

1. Whether the District Court erred when it refused to offset the minor child's accrued medical bills by her Social Security Disability benefits.

2. Whether the District Court erred by failing to credit Dale's medical costs arrearage by the money Sandy received from the benefit auction held by the Snow Warriors Snowmobile Club.

3. Whether the District Court erred by not compelling Sandy to comply with Dale's discovery requests.

4. Whether the District Court erred by granting attorney fees.

BACKGROUND

The decree ending Dale and Sandy's marriage was entered on November 3, 1986. The parties had two minor children, Darcy and Sara, at the time the decree was entered, and Dale was ordered to pay child support in the amount of $125 per month for each child. Dale was also ordered to provide medical insurance for the children and to pay for any medical expenses not covered by insurance.

In May of 1990, Dale began receiving Social Security disability benefits. As a result of Dale's disability, Sara, who

2

was still a minor, was also awarded monthly Social Security benefits in the amount of $488 retroactive to October 1, 1988. Sara received a lump sum payment of $7,900 from the retroactive benefit award.

On December 5, 1990, Dale filed a petition asking the District Court to review the child support order contained in the decree. Dale requested that he be relieved from having to pay the child support obligation for Sara, as a result of her receiving Social Security benefits. Dale also requested that he be relieved from his obligation to provide health insurance for Sara, and that he be relieved from having to pay all health care costs retroactive to October 1, 1988. In a written order dated January 22, 1991, the District Court relieved Dale of his child support obligation, and ordered that Dale be responsible for one-half of any medical costs incurred by Sara. The court did not retroactively relieve Dale of his obligation to pay medical expenses from the date of the decree to the date of the order.

On April 12, 1993, Sandy filed a motion requesting, among other things, that Dale be required to pay all past due medical bills that he was responsible for according to the District Court's prior rulings. The District Court granted the motion, and found that Dale was responsible for $888.98 as a result of a previous judgment, and $2,429.74 for his portion of health care costs accruing after that judgment. Dale appeals from this ruling. Other facts will be presented as necessary for discussion of the issues.

3

## 1. OFFSET FOR SOCIAL SECURITY BENEFITS

Dale argues that the District Court should have credited the lump sum payment Sara received from the Social Security Administration against his medical costs arrearages. Dale states that he presumed the benefits paid to Sara were replacing any payments required of him. However, the District Court concluded that Dale was responsible for all of Sara's medical costs under the terms of the original decree, and one half of Sara's medical bills under the terms of its January 22, 1991 order. This Court reviews conclusions of law to determine whether the district court's interpretation of the law was correct. Burris v. Burris (1993), 258 Mont. 265, 269, 852 P.2d 616, 619. We conclude that the District Court was correct in concluding that Dale was responsible for accrued medical costs according to the terms of its prior rulings.

This Court has determined that Social Security benefits may be treated as a contribution from the disabled obligor parent toward the support of the children. In re Marriage of Durbin (1991), 251 Mont. 51, 58, 823 P.2d 243, 247. However, § 40-4-208(1), MCA, provides "a decree may be modified by a court as to maintenance or support only as to installments accruing subsequent to actual notice to the parties of the motion for modification." Accordingly, a court cannot credit a child's receipt of Social Security benefits on behalf of a disabled parent toward that parent's child support obligation until the parent moves to modify the decree. Marriage of Durbin, 823 P.2d at 247.

4

In the instant case, Dale moved to modify his child support and medical care costs obligation on December 5, 1990. The District Court by its order of January 22, 1991, relieved Dale of his obligation to pay child support, and limited his obligation for Sara's health care costs to one-half of such expenditures. Sara received the lump sum award shortly before Dale filed his motion for modification. Therefore, pursuant to § 40-4-208(1), MCA, Dale's child support and medical care costs obligation could only be modified back to December 5, 1990, when Dale gave notice of his motion for modification. In re Marriage of Bolt (1993), 259 Mont. 54, GO, 854 P.2d 322, 325.

We hold that the District Court was correct in concluding that Sara's receipt of Social Security benefits did not automatically relieve Dale from his obligation to pay his share of Sara's medical bills that he was responsible for according to the terms of the previous court orders.

## 2. FUND RAISER OFFSET

In March of 1991, the Ponderosa Snow Warriors, a snowmobile club located at Lincoln, Montana held a fund raiser to help pay for Sara's medical expenses. As a result of the benefit, Sandy received approximately $5,000. Sandy did not use the money to pay for Sara's past medical expenses, and Dale argues that the District Court abused its discretion by not ordering the money raised to offset the medical costs arrearage.

According to the terms of the decree and the January 22, 1991 order of the District Court, Dale was responsible for a share of

5

the medical costs. If Dale wanted to relieve himself of this obligation, Dale was required by law to petition the court for modification. Section 40-4-208, MCA. Because Dale failed to petition the court for a modification subsequent to Sandy's receipt of the fundraiser money, we hold that the District Court did not abuse its discretion by refusing to offset the medical costs arrearage by $5,000.

### 3. DISCOVERY REQUESTS

The third issue Dale raises concerns whether the District Court erred by not compelling Sandy to comply with Dale's discovery requests. As stated earlier in the opinion, the District Court modified the terms of the original decree concerning child support and medical costs on January 22, 1991, and ordered Dale to pay one-half of Sara's medical costs.

On April 12, 1993, Sandy moved the court for a hearing to determine why Dale had not made the required payments under both the original decree and the January 22, 1991 order, and to order him to make immediate payment of the medical costs previously incurred. On April 27, 1993, Dale served Sandy with a discovery request. In response to the request, Sandy filed a motion for sanctions under Rule 11, M.R.Civ.P., alleging that the discovery request was prepared and served in response to Sandy's April 12, 1993 motion for an order to show cause. Dale then filed a motion to compel discovery and noticed the matter for hearing on June 16, 1993. Although Dale appeared for the June 16 hearing, neither Sandy nor her attorney appeared.

6

On June 21, 1993, Dale moved for sanctions against Sandy for her failure to appear at the June 16, 1993 hearing, pursuant to Rule 37, M.R.Civ.P. Sandy responded to the motion on June 23, 1993, alleging that Dale's discovery requests were and are totally irrelevant to the question of why Dale has failed to make payments required by the decree and the January 22, 1991 order.

On November 15, 1993, the District Court issued its Findings of Fact, Conclusions of Law and Order regarding the above motions. The court concluded that while the discovery requests concerning the snowmobilers' fund raiser, did relate to the medical costs issue, Dale had failed to move to modify the prior orders of the court requiring him to pay for a portion of these costs. The court found that the remaining discovery requests did not relate to the issues before the court. Therefore, the court denied Dale's motion to compel and both parties' motions for sanctions.

In interpreting the trial court's rulings on discovery issues, this Court will reverse the trial judge only when his or her judgment may materially affect the substantial rights of the appellant and allow the possibility of a miscarriage of justice. Massaro v. Dunham (1979), 184 Mont. 400, 405, 603 P.2d 249, 252: Granite County v. Komberec (1990), 245 Mont. 252, 261, 800 P.2d 166, 171.

The District Court has inherent discretionary power to control discovery based on its authority to control trial administration. State ex rel. Guar. Ins. v. District Court (1981), 194 Mont. 64, 67-68, 634 P.2d 649, 650. "Control over pretrial discovery is best

7

exercised by the District Court which is in a better position than this court to supervise the day to day operations of pretrial discovery." State ex rel. Guar. Ins., 634 P.2d at 650.

In the instant case we conclude that the District Court's denial of Dale's motion to compel did not materially affect his substantial rights. Any discovery Dale might have received concerning the fund raiser would not have changed his obligation to pay medical costs under the original decree or the January 22, 1991 order. Dale was responsible for paying the accrued medical costs regardless of the status of the fundraiser money. The remaining discovery requests had nothing to do with issues before the court, and therefore could not have affected his responsibility to pay for the health care costs as previously ordered by the District Court.

We hold that the District Court's discovery ruling did not materially affect Dale's substantial rights and that the court did not abuse its discretion in denying his motion to compel discovery.

### 4. ATTORNEY FEES

Finally, Dale argues that the District Court erred by granting attorney fees to Sandy when she was represented by a pro bono attorney who was representing her at the request of Montana Legal Services Association. Sandy responds that Dale owns substantial assets: receives full Social Security disability payments; has forced her to enlist the aid of the court to collect small sums of money that lawyers would not find economical to pursue: has failed to pay her attorney fees awarded as a result of a previous court appearance in this case: and that any attorney fees awarded should

8

be paid directly to Montana Legal Services Association.

Dale's assertion raises two separate issues: (1) whether the District Court abused its discretion by awarding attorney fees in the first instance; (2) whether a pro bono attorney or Montana Legal Services Association may seek and accept on behalf of an indigent client attorney fees and costs under § 40-4-110, MCA.

As to the first issue, Sandy requested that she be awarded $1,000 in attorney fees. The District Court stated that Sandy failed to provide the court with evidence supporting the reasonableness of the $1,000 fee, but awarded her $300 in attorney fees, nevertheless. The court concluded that Sandy was entitled to $300, in light of Dale's continuing failure to provide medical insurance for the children or to pay his share of the medical bills.

Section 40-4-110, MCA, allows the district court to discretionarily award attorney fees and costs in certain domestic relation matters. In re Marriage of Dzivi (1991), 247 Mont. 165, 167-68, 805 P.2d 567, 568. Section 40-4-110, MCA, provides:

> The court from time to time, after considering the financial resources of both parties, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under chapters 1 and 4 of this title and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment. The court may order that the amount be paid directly to the attorney, who may enforce the order in his name.

In interpreting that section, we have required that before a court awards attorney fees under the statute, the petitioning party must make a showing of necessity. In addition, the award must be

9

reasonable and must be based on competent evidence. In re Marriage of Barnard (1990), 241 Mont. 147, 154, 785 P.2d 1387, 1391: In re Marriage of Laster (1982), 197 Mont. 470, 479, 643 P.2d 597, 602; Wilson v. Bean (1981), 192 Mont. 427-28, 628 P.2d 287, 289. To make a showing of reasonableness a hearing must be held allowing for oral testimony, the introduction of exhibits, and the opportunity to cross-examine. Marriase of Barnard, 785 P.2d at 1391. If the award of attorney fees is supported by substantial evidence, we will not reverse the award upon appeal. Marriage of Barnard, 785 P.2d at 1391-92.

In its Conclusions of Law, the District Court stated that Sandy did not submit any evidence to support the amount of the attorney fees requested or the reasonableness of the fees. Therefore, under the rules set forth in our previous cases, we must reverse the District Court's award of $300 in attorney fees and remand for an evidentiary hearing in order to determine necessity, in order to consider the statutory criteria, and for a determination of the reasonableness of the fees requested.

In so doing, however, we must also address the second issue mentioned above -- Dale's argument that Sandy is not entitled to an award of attorney fees at all because she is represented by a pro bono attorney at the request of Montana Legal Services Association. Dale argues that pro bono attorneys and, presumably, Legal Services attorneys, represent indigent litigants as a "community service" and have, therefore, no expectation of payment or right to collect attorney fees from the opposing party. Implicit in Dale's argument

10

is the proposition that Sandy would receive a windfall if the court awarded attorney fees to her when she did not incur any obligation of payment or debt as a result of her obtaining legal representation, Dale's position has support in our prior case law.

This Court has previously held that a trial court cannot award attorney fees pursuant to § 40-4-110, MCA, to a party represented by a legal services attorney. Thompson v. Thompson (1981), 193 Mont. 127, 129, 630 P.2d 243, 244. In Thompson, we reasoned that "the authority of the court to order the payment of an attorney's fee in a divorce action does not exist for the protection of the attorney, but is strictly for the benefit of the client." Thompson, 630 P.2d at 244. Therefore, we affirmed the district court's ruling which denied the award of attorney fees to the former wife who was represented by Montana Legal Services Association. Thompson, 630 P.2d at 244. In our decision we reasoned that a party who was represented by a legal services attorney could not show a personal necessity to seek payment from the former spouse. Thompson, 630 P.2d at 244.

When this Court decided Thompson, the case law governing awarding fees to legal services organizations was not fully developed. Subsequent to our decision, however, the majority of jurisdictions ruling on this issue have held that legal services organizations are entitled to attorney fees both in family law cases and in non-family law cases. See e.g., In re Marriage of Ward (Cal.App. 1992), 4 Cal.Rptr.2d 365; Beeson v. Christian (Ind. 1992), 594 N.E.2d 441; In re Marriage of Gaddis (Mo.App. 1982), 632

11

S.W.2d 326 (family law cases); shands v. Castrovinci (Wis. 1983), 340 N.W.2d 506 (landlord tenant): Kleine-Albrandt v. Lamb (Ind.App. 1992), 597 N.E.2d 1310 (wage claim).

We also conclude that policy considerations which were not discussed in our opinion in _Thomnson_ militate in favor of allowing the district courts to discretionarily award attorney fees to pro bono attorneys and to Montana Legal Services Association on behalf of indigent clients, providing the statutory criteria of § 40-4-110, MCA, and the evidentiary requirements mentioned above are otherwise satisfied. Accordingly, under the circumstances, it is necessary that we reconsider our decision in _Thomnson._

At the outset, we do not distinguish between litigants represented by pro bono attorneys and those represented by Montana Legal Services Association. The same considerations, discussed hereafter, apply. The deciding factor is not the status of the attorney providing the professional services, but that the indigent client is financially unable to pay for legal representation in a domestic relations proceeding where representation is a practical requirement.

In _Thompson,_ our decision to deny the award of attorney fees to individuals represented by legal services agencies was based on the concept of "personal necessity." _Thompson,_ 630 P.2d at 244. We reasoned that an award of fees was not necessary because the wife who was awarded attorney fees did not incur a debt as a result of obtaining legal representation. While true as far as it goes, that is only one, but not necessarily, the most important or the

12

determinative consideration in resolving this issue.

We live in a society where, next to health care, competent legal service is likely the most essential, yet most costly, professional service that most people from time to time require. That is certainly no more evident than in domestic relations cases wherein the court's decision will likely involve important property questions and will forever alter the personal relationships and obligations of the litigants to each other.  More importantly, however,  at issue in many such cases are the relationships of children to their parents and the fundamental rights of those children to food, clothing, shelter, education, medical care, support,  and to a safe and reasonably stable home life.  The multiplicity of laws and often technical court rules and procedures governing domestic relations cases combined with the emotionally charged nature of such proceedings, present a mine field to the litigant who is too poor to hire competent counsel.

Legal Services Corporation is a publicly funded agency whose purpose is to ensure that economic barriers to legal assistance are minimized and whose overall objective is to provide equal access to our country's system of justice.  42 U.S.C. § 2996.  In fulfilling that mandate, Legal Services works to develop pro bono programs which, presumably, will provide services to greater numbers of eligible clients and thereby advance the purposes of the Legal Services Corporation Act.  See, 45 C.F.R. 1614(l)(a). To that end, as in this case, Montana Legal Services Association refers many domestic relations cases to attorneys willing to take the case

13

without charging a fee to the indigent client.

It is important to point out that the regulations promulgated pursuant to the Legal Services Corporation Act, permit legal services agencies to request and accept a fee awarded or approved by a court or administrative body. 45 C.F.R. § 1609.5. This regulation helps insure that eligible clients are able to obtain appropriate and effective legal assistance. 45 C.F.R. § 1609.1.

Unfortunately, the number of indigent litigants appears to be growing, while the numbers of attorneys willing to do domestic relations work for an affordable fee seem to be decreasing. The net result of that unfortunate state of affairs is that already financially strapped and understaffed legal services organizations must deal with ever expanding case loads and, of necessity, must increasingly rely on members of the bar who are willing to render legal assistance to indigent domestic relations clients, pro bono, to pick up the overflow.

Moreover, many attorneys, in fulfilling their professional responsibilities to provide public interest legal service as required by Rule 6.1 of Montana's Rules of Professional Conduct, provide representation to indigent domestic relations clients at a reduced charge or for no charge, without a request from Montana Legal Services Association.

Section 40-4-110, MCA, broadly allows the trial court to discretionarily award attorney fees in domestic relations cases "... after considering the financial resources of both parties." Furthermore, our statute allows the court to "... order that the

14

amount [awarded] be paid directly to the attorney, who may enforce the order in his name." Importantly, there is nothing in the statutory language which precludes a district court from awarding attorney fees in an appropriate case merely because the attorney representing the indigent party has agreed to not charge the client for his or her professional services. Equally important, there is nothing in the statute that makes the litigant who would, otherwise, be required to pay attorney fees, the third party beneficiary of the Legal Services or pro bono attorney's agreement with the indigent client.

While awarding attorney fees to the indigent client represented by Montana Legal Services Association or a pro bono attorney, would, in fact, be a windfall to the client, that result can be easily avoided by the court simply awarding the fee directly to Legal Services or to the attorney, as is permitted by § 40-4-110, MCA. On the other hand, refusing to award attorney fees in favor of the indigent client because of the status of his or her attorney, where the opposing litigant is financially able and would otherwise be charged with the indigent party's fees and costs under the statute, represents a windfall to the non-indigent litigant.

Presumably, if Montana Legal Services Association and pro bono attorneys can recoup from the non-indigent litigant those fees and costs for which he or she would, otherwise, be liable under the statute, that organization and those attorneys will be financially better able to provide more legal services to the increasing numbers of indigent litigants who need such services. Moreover,

15

non-indigent litigants who might be encouraged to simply "run up the other party's bill" with vexatious conduct and frivolous court proceedings, might be less inclined to do so knowing that the court has the statutory discretion to award the indigent party's attorney fees and costs against the offending party.

Recognizing the validity of those considerations and the legislature's grant to the district courts of broad discretion to award attorney fees in domestic relations cases, we are also persuaded by the post-Thompson decisions of other jurisdictions that our focus in that case was, in retrospect, too narrow. Those courts have concluded that the broader principle of providing equal access of justice to all warrants the award of fees to individuals represented by legal services organizations. See for example, Marriage of Swink, (Colo.App. 1991), 807 P.2d 1245; Benavides v. Benavides (Conn.App. 1987), 526 A.2d 536; In re Marriage of Gaddis (Mo.App. 1982), 632 S.W.2d 326.

For example, the Connecticut court which considered this issue in Benavides reasoned as follows:

> We are aware that indigents are represented by legal services attorneys in a large number of family relations matters. It would be unreasonable to allow a losing party in a family relations matter to reap the benefits of free representation to the other party. A party should not be encouraged to litigate under the assumption that no counsel fee will be awarded in favor of the indigent party represented by public legal services: or as in this case, that a reasonable fee will be discounted for the same reason. 'Put in another way, the public should be relieved from the financial burden of obtaining an indigent plaintiff's divorce or successfully defending against a husband's complaint, to the extent that the husband is able to pay all or part of her attorney's fees. The taxpayer has an interest in recovering where possible a portion of the costs in these

16

situations.'

An award of counsel fees that does not discriminate against non profit legal service entities will encourage non profit counsel to expend its resources in the representation of those clients who are unable to afford private counsel in disputed child custody and child support enforcement litigation. The purposes of such acts as the Uniform Child Custody Jurisdiction Act... are advanced and are made more available to the poor where there is an expectancy that the nonprofit legal services will recoup at least part of its resources through an award of counsel fees to its client. Furthermore, a realization that the opposing party, although poor, has access to an attorney and that an attorney's fee may be awarded deters noncompliance with the law and encourages settlements. (Citations omitted.)

Benavides, 526 A.2d at 538.

Similarly, in Marriase of Swink, 807 P.2d 1245, the Colorado court addressed this same issue under a statute nearly identical to § 40-4-110, MCA. The trial court denied the wife's request for attorney fees as she wasrepresented by a pro bono attorney at the request of a legal services agency. The appellate court overturned the trial court holding that a showing of debt incurment was not necessary since the statute allowed an award for "legal services rendered." Marriage of Swink, 807 P.2d at 1247.

Simply stated, an award of attorney fees under § 40-4-110, MCA, is authorized when, giving due consideration to the financial resources of both parties, the requesting party shows necessity -- i.e. the inability to pay for legal representation -- and reasonableness of the fees requested. Whether a party incurs debt is irrelevant, and necessity is unrelated to the status of the attorney who delivers the legal services.

Accordingly, for the reasons aforementioned, we conclude that it is appropriate we overrule our decision in Thompson to the

17

extent our decision in that case prohibits a discretionary award of attorney fees under § 40-4-110, MCA, in favor of a party represented by Montana Legal Services Association or a pro bono attorney.

We hold that a district court may discretionarily award attorney fees under the criteria set forth in § 40-4-110, MCA, to either Montana Legal Services Association or to a pro bono attorney representing the requesting party providing that such party demonstrates the necessity for and reasonableness of the fees requested.

Affirmed in part and remanded for further proceedings consistent with this opinion with respect to Issue No. 4.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

18

September 20, 1994

CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Dale H. Malquist
P. O. Box 633
Lincoln, MT 59639


Donald A. Garrity
Attorney at Law
1313 Eleventh Avenue
Helena, MT 59601

Daniel Minnis
Montana Legal Services
801 N. Last Chance Gulch
Helena, MT  59601

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy