**Henry Abella PACANA, Appellant,**

v.

**STATE of Alaska, Department Of Revenue, Child Support Enforcement Division, ex rel, Betty Lee Watts Pacana, Appellee.**

**No. S–7594.**

Supreme Court of Alaska.

July 25, 1997.

Mark Regan and James J. Davis, Jr., Alaska Legal Services Corporation, Anchorage, and Robert K. Hickerson, Anchorage, for Appellant.

---

Terisia K. Chleborad, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH, and FABE, JJ.

## OPINION

EASTAUGH, Justice.

### I. INTRODUCTION

Henry Pacana appeals a superior court ruling denying him credit against his child support obligations for Social Security disability benefits paid on his behalf to his children. We conclude that the credit should have been allowed.

### II. FACTS AND PROCEEDINGS

Henry Pacana and Betty Lee Watts were married in May 1980. They had three children: Patrick, born in 1983, Nathan, born in 1984, and Sabrina, born in 1986. Henry and Betty were divorced in January 1988.

At the divorce proceedings the trial court granted Betty sole legal and physical custody of the children. It also ordered Henry to pay monthly child support of $250 per child, for a total monthly obligation of $750. The court determined that the support obligation should begin effective May 4, 1987.

Henry became disabled in 1990. A year later he was awarded Social Security disability benefits, which became his primary income. Because Henry seldom paid his child support obligations, the Alaska Child Support Enforcement Division (CSED) began garnishing his permanent fund dividends and half of his Social Security payments in September 1993. Henry's monthly disability benefit was $1,062, so the garnished amount did not meet his $750 monthly child support obligation.

Henry's disability and his participation in the Social Security insurance system entitled the children to Social Security disability dependent benefits, also known as children's insurance benefits (CIB), as of November 1991. In December 1992 each child was awarded ongoing CIB and back CIB to November 1991. The monthly CIB per child in 1991 was $171; it increased annually and was $193 in 1995.

In October 1995 CSED sent Henry a child support account statement showing that Henry owed $57,374.39 in past due child support. CSED had not credited the CIB payments, totaling $26,544, against Henry's support obligation.

Henry moved to modify the child support order in November 1995. He argued that the CIB payments should be credited against his child support arrearage. The superior court gave Henry credit for the ongoing CIB payments, reducing his ongoing, out-of-pocket child support to $61 per month. However, the court refused to credit prior CIB payments, worth approximately $26,544, towards the support arrearage, reasoning that the credit would require an impermissible retroactive modification of support.

Henry appeals.

### III. DISCUSSION

#### A. Standard of Review

■ Whether Henry is entitled to have his child support arrears reduced by CIB paid to his children is a question of law that we review de novo. Miller v. Miller, 890 P.2d 574, 576 (Alaska 1995). Under this standard our duty is "to adopt the rule of law that is most persuasive in light of precedent, reason and policy." Barber v. Barber, 915 P.2d 1204, 1209 n. 10 (Alaska 1996) (citation omitted).

#### B. Offset for CIB Paid before Obligor Moves to Modify

■ We have not previously decided whether a parent can receive credit for CIB payments made before the parent moves to modify child support, although we have previously discussed credit for disability benefits paid directly to the children. See State, Department of Revenue, Child Support Enforcement Division v. Fry, 926 P.2d 1170 (Alaska 1996); Miller v. Miller, 890 P.2d 574 (Alaska 1995).

In Miller we held that "a divorced parent who is required to pay support to a child ...

is entitled to child support credit for social security payments the child receives on the parent's behalf." 890 P.2d at 575. *Miller* stated that Social Security retirement benefits [1] are not considered welfare benefits; rather, they are earned when one participates in the Social Security system. *Id.* at 578. We also held that the CIB payments should be counted as income to the noncustodial parent for purposes of calculating child support under Civil Rule 90.3. *Id.* We declined to decide whether CIB payments can be credited retroactively against a child support arrearage. *Id.* at 577–78 n. 5.

We have since reaffirmed *Miller* and held that ongoing support obligations of obligor parents are offset by CIB payments made to their children, including children who have received AFDC assistance. *Fry*, 926 P.2d at 1174. We there again declined to decide whether CIB payments can be credited against child support arrearage. *Id.* at 1173–74.

Unlike some other states,[2] Alaska has no statute that gives credit to the obligor parent for Social Security benefits paid directly to the children.[3] A court rule provides that child support arrearages may not be modified retroactively, except when paternity is disestablished. Alaska R. Civ. P. 90.3(h)(2).[4] *See also* 42 U.S.C. § 666(a)(9) (1991) (Bradley Amendment).

Henry argues in favor of the majority rule, which is that CIB payments made prior to a motion to modify are credited against child support obligations. *See, e.g., In re Marriage of Henry*, 156 Ill.2d 541, 190 Ill.Dec. 773, 779, 622 N.E.2d 803, 809 (1993); *Weaks v. Weaks*, 821 S.W.2d 503, 507 (Mo.1991); *Children and Youth Servs. of Allegheny*

*County v. Chorgo*, 341 Pa.Super. 512, 491 A.2d 1374, 1377 (1985). *See generally* Michael A. DiSabatino, Annotation, *Right to Credit on Child Support Payments for Social Security or Other Government Dependency Payments Made for Benefit of Child*, 34 A.L.R.5th 447, 469–76 (1995). More than ten states follow this rule in some form. *Id.* at 469–70.

Henry argues that denying a credit would be unfair to the obligor, who has actually contributed much more to his children than CSED recognizes. Henry claims that since CSED has also been garnishing his disability benefits, his children have been receiving much more than the original child support order awarded them.

Responding to the superior court's observation that Rule 90.3(h)(2) prohibits a retroactive credit, Henry explains that a credit for CIB payments does not retroactively modify the child support award. He compares this crediting procedure to the law of judgments where a debtor would be allowed to assert that he has paid his creditor greater payments, which have not been recognized.

Betty argues in favor of the minority rule which strictly construes the prohibition against retroactive modification of child support arrearages. *See, e.g., Newman v. Newman*, 451 N.W.2d 843, 845 (Iowa 1990); *In re Marriage of Malquist*, 266 Mont. 447, 880 P.2d 1357, 1360 (1994) (ruling that a court cannot credit CIB payments until the obligor parent moves to modify); *Hinckley v. Hinckley*, 812 P.2d 907, 913 (Wyo.1991). *See generally* DiSabatino, *supra*, at 482–84. Betty contends that allowing a credit would result in an impermissible retroactive modification

1. *Miller* noted that for the purposes of this analysis there is no reason to distinguish between Social Security retirement benefits and Social Security disability benefits. *Miller*, 890 P.2d at 577.

2. Several states have statutes that specifically provide that Social Security disability payments are to be credited against a disabled parent's child support obligation. *See, e.g.,* Cal. Fam. Code § 4504; Utah Code Ann. § 78–45–7.5[8][b]; Wash. Rev.Code § 26.18.190.

3. One child support enforcement statute discusses Social Security disability payments. *See* AS

25.27.062 (CIB payments may affect the timing and size of income withholding order).

4. Alaska Civil Rule 90.3(h)(2) states:

Child support arrearage may not be modified retroactively, except as allowed by AS 25.27.166(d) [disestablishment of paternity]. A modification which is effective on or after the date that a motion for modification, or a notice of petition for modification by the Child Support Enforcement Division, is served on the opposing party is not considered a retroactive modification.

because Henry's past support obligation would change based on the Social Security benefit income he received.

Betty also argues that the minority rule is more equitable. For example, where the CIB payments exceed the support obligation and where they substantially increase the obligor's income, the children should get the benefit of that increase.

Betty also asserts that modification hearings are required when, as here, the obligor wants to change his obligation based on a change in income. She concludes that the fairer rule would require the obligor to make a timely motion to modify.

■ We find Henry's arguments more persuasive. We read Rule 90.3(h)(2) to allow an automatic credit against child support arrearage for CIB. *See Weaks,* 821 S.W.2d at 506–07. Additionally, we find a credit warranted under the circumstances.

Rule 90.3(h)(2) only restricts the retroactive modification of a child support order. The commentary to Rule 90.3 states, "The prohibition against retroactive modification limits both requested decreases and increases in child support." Alaska R. Civ. P. 90.3 cmt. X. The comments to the Bradley Amendment state, "Federal law and regulations do not prohibit the correction of improperly calculated arrearages." 54 Fed. Reg. 15762 (1989). The Rule 90.3(h)(2) restriction only applies to retroactive changes in the amount of the child support award.

Moreover, Rule 90.3(h)(2) does not address non-conforming payments that CSED does not recognize as child support payments. *See generally* J. Eric Smithburn, *Removing Nonconforming Child Support Payments from the Shadow of the Rule against Retroactive Modification,* 28 J. Fam. L. 43 (1990) (analyzing different approaches to retroactive credits against child support arrearage). Examples of non-conforming payments besides CIB payments are cash the obligor sends directly to the children or monies for school supplies or medical expenses.

Alaska cases occasionally have credited nonconforming payments. *See Arndt v. Arndt,* 777 P.2d 668, 671 (Alaska 1989);

*Young v. Williams,* 583 P.2d 201, 203 (Alaska 1978). *Young* states:

> The majority position is that payments voluntarily made to the children are not to be credited against child support obligations. The rationale is that such voluntary payments to the children quite often are intended for particular purposes whereas the manner in which child support payments are used to meet the children's basic needs is left to the discretion of the parent or guardian with custody. In those few cases in which credit has been granted, it is for payments made at the request of the parent or guardian with custody or for cash gifts used for child support, the disbursement of which was controlled by the parent or guardian with custody.

583 P.2d at 203 (footnotes omitted). Because the CIB payments are regular monthly payments and the custodial parent is aware of them, they can be credited against a child support obligation.

Our holding here does not conflict with our rulings in *Miller.* 890 P.2d at 577–78 & n. 5. In *Miller,* we found "it necessary to include social security benefits payable to [the child] on [the obligor's] behalf as income for purposes of the Rule 90.3 calculation of income." *Id.* at 578. However, *Miller* only requires a prospective recalculation of the child support order. *Id.*

Additionally, Henry's fairness arguments are stronger than Betty's. Such arguments are the primary reason many courts have followed the majority rule. The Missouri Supreme Court strongly approves of a credit:

> To impose the requirement of a court proceeding, i.e., modification hearing, on a party seeking to credit disability payments received by the custodial parent for the benefit of the parties' children is overly harsh. In situations involving disability benefits, the party seeking credit most likely faces a reduction of income, financial uncertainty, physical or mental impairment and other attendant consequences of the disability. The additional burden of petitioning the court for a modification typically wastes time and money and helps no one.

*Weaks*, 821 S.W.2d at 506–07. We agree that in most cases the obligor parent who qualifies for Social Security disability payments will have significant health and financial problems. It may be difficult for a disabled obligor to make a formal and timely modification motion in order to receive a credit. If the parent has been incapacitated, it may be impossible. Moreover, the process for receiving disability payments is long and complex, and the likelihood of filing a timely motion to receive proper credit is low. *See Moore v. Beirne*, 714 P.2d 1284, 1286 & n. 5 (Alaska 1986) (noting that decision on eligibility for Social Security disability can take up to two years). Henry's children qualified for CIB in November 1991, but did not begin receiving the payments until December 1992. Henry had no income before his disability benefits began. To receive a complete prospective credit under the minority rule, Henry would have had to have moved for a modification in November 1991, thirteen months before his children's eligibility was determined.

Betty claims that the minority rule is more equitable if monthly CIB payments exceed the awarded child support. In this circumstance, obligor parents might wish to credit the overpayment amount against a future support obligation or force the custodial parent to repay this amount.[5] Nonetheless, most courts following the majority rule treat the excess payment during the obligor's disability as a gratuity to the children, so that the custodial parent does not owe the obligor. *See, e.g., Weaks*, 821 S.W.2d at 507 ("Any excess is deemed a gratuity to the extent that it exceeds the amount of support mandated by the decree."); *Andler v. Andler*, 217 Kan. 538, 538 P.2d 649, 654 (1975); *Chorgo*, 491 A.2d at 1379.

An overpayment issue is present here. It is the result of CSED's garnishments rather than any CIB payments that exceed the support order. After approximately September 1993, CSED was garnishing Henry's disability benefits and his permanent fund dividend. Between the garnished benefits and the CIB payments, Henry was effectively paying his children more than $1,000 per month, although the support order awarded only $750. We conclude that Henry's arrearage accruing after September 1993 should be canceled. Henry's overpayments after that date will offset other arrearages.[6]

## IV. *CONCLUSION*

We hold that Henry's child support obligation may be offset by the Social Security benefits paid to his children on his behalf without a prior modification motion. We REVERSE and REMAND the case for further proceedings to calculate the reduction in Henry's arrearage.

---

5. The obligor parent may also wish to credit any overpayment against an arrearage that arose prior to the parent's disability. *See Children and Youth Servs. of Allegheny County v. Chorgo*, 341 Pa.Super. 512, 491 A.2d 1374, 1379–80 (1985). Since this issue is not directly before us, we decline to address it.

6. The record is not sufficiently clear that we can make an accurate accounting of Henry's overpayments. Thus, we cannot say by how much Henry's arrearage should be reduced. We leave that calculation to the superior court on remand.