Mary C. WHAH, Appellant,

v.

Andrew WHAH, Appellee.

No. S–10171.

Supreme Court of Alaska.

Aug. 23, 2002.

25. *Id.*

Jody A. Reausaw, Law Office of Jody A. Reausaw, Anchorage, for Appellant.

Ryan R. Roley, Anchorage, for Appellee.

Before: FABE, Chief Justice, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

Andrew Whah, whose child was then receiving Children's Insurance Benefit (CIB)

payments, agreed to entry of an October 1994 order requiring him to pay monthly child support of $896. In 1998 he sought a child support credit for the CIB payments. Mary Whah argued in opposition that Andrew had waived any credit in his August 1994 handwritten note stating that he knew he might be entitled to a credit for the CIB payments, but also stating that "I agree to pay the whole amount." The superior court, citing *Miller v. Miller*,[1] ruled that Andrew was entitled to the credit. We reverse and remand because we cannot tell whether the court considered Mary's waiver argument, or rejected it on its merits despite unresolved potentially material factual disputes.

## II. FACTS AND PROCEEDINGS

Andrew and Mary Whah married in 1965. They filed a petition to dissolve their marriage in September 1994. They had one minor child, Aniela, born in 1979. Their dissolution petition stated that Andrew's "net monthly child support payment" obligation, calculated under Alaska Civil Rule 90.3, was $896. Their petition did not identify any child support credits or circumstances justifying a lower payment. At the October 13, 1994 dissolution hearing, the parties confirmed that child support would be $896; Andrew represented himself at the hearing and counsel represented Mary. The superior court entered an order on October 17, 1994 requiring Andrew to pay monthly child support of $896.

Although the parties did not mention it in their petition or during the hearing, Andrew had been receiving social security benefits for a long-term disability; as a result, Aniela had been receiving Children's Insurance Benefits (CIB).

Andrew paid child support of $896 per month as the dissolution petition contemplated and the 1994 order required, but in January 1998 he filed a motion to modify child support. Among other things, his motion sought credit for the social security benefits paid on behalf of Aniela before she turned eighteen in September 1997. He attached to his affidavit printouts to support his aver-

1. 890 P.2d 574 (Alaska 1995).

ment that the social security payments exceeded $18,000.

Mary opposed his motion, and argued that Andrew was really seeking an offset. She stated in her accompanying affidavit that she was attaching "a handwritten note [Andrew] wrote to my lawyer, Brent Cole, which shows he understood his right to an offset and his *waiver* of that right at that time." The copy of the handwritten note bears an August 30, 1994 transmission date.

According to the record, Andrew signed the dissolution petition containing the child support calculation on August 26, 1994; Mary signed it on September 2. The note Mary attached to her affidavit states, among other things:

> Accord to Social Security Agent Nettie Snorton the amount Sherry & Aniela receive from Social Security *is* credited to child support required by court. *However* I agree to pay the whole amount.

In reply, Andrew requested a hearing to resolve fact disputes arising from Mary's opposition to his request for a credit. The superior court held a hearing in December 1998 at which Andrew and Mary testified but at which neither discussed the issue of waiver or the handwritten note. Superior Court Judge Dan A. Hensley entered a January 1999 order that required the Alaska Child Support Enforcement Division (CSED) to calculate Andrew's child support arrearages. CSED then conducted an audit; its September 1999 notice stated that CSED had reduced Andrew's arrearages by $11,133.24 for the period October 31, 1994 through September 1999, and that it was crediting his account with $15,557 in CIB payments received by Aniela for the November 1994 September 1997 period.

Mary then moved for an order finding that Andrew had waived any possible CIB credit by executing the handwritten note and sending it to Mary's lawyer before Mary and Andrew entered into and filed the September 1994 dissolution petition agreeing to monthly child support of $896. She argued that CSED's audit failed to acknowledge Andrew's waiver, and argued that this court's

decisions permitting a credit for CIB payments did not apply because Andrew had "knowingly waived" a credit. She supported her motion with her February 1998 affidavit that discussed and attached Andrew's note to Mary's attorney. Andrew opposed this motion, arguing that the dissolution petition contained no waiver and that any offer to waive during negotiations was of no significance because it was not incorporated into the petition.

By order of March 2001, Superior Court Judge Eric T. Sanders denied Mary's motion after having "reviewed the pleadings." The order referred to paragraph seven of Mary's March 18, 1998 affidavit in which she "assumed" that the CIB payments would be offset against Andrew's child support obligation. Mary moved for reconsideration, arguing that she was referring in paragraph seven to CIB payments made before the dissolution. On reconsideration, the court "reviewed the pleadings [and] memoranda" and stated that it was "not convinced that Mary Whah's motion is meritorious in view of the dissolution agreement the parties signed and the decision in *Miller v. Miller,* 890 P.2d 574 (AK 95)."

Mary appeals.

## III. DISCUSSION

### A. Remand Is Necessary To Decide Whether Andrew Waived any Credit.

Mary argues that the dissolution petition's discussion of the amount of child support takes Andrew's waiver of a CIB credit into consideration. She asserts that there was no reason for the dissolution petition to discuss the waiver, because the petition predated *Miller v. Miller.*[2] When she and Andrew prepared the petition, they knew that the CIB payments could be credited and, Mary argues, Andrew knew that he was voluntarily waiving that credit. But the parties did not know the extent to which this court's later decisions would enforce that entitlement; she asserts that she and Andrew therefore thought that their verbal understanding (as expressed in Andrew's note) would be suffi-

---

**2.** 890 P.2d 574 (Alaska 1995).

cient. She also argues that admissible extrinsic evidence establishes the parties' intent to waive the credit. She contends that Andrew expressed this intent in a writing he has not refuted, i.e., his handwritten note, and that he made the full payments of $896 for more than three years after their dissolution petition was filed. She points out that the petition is silent as to both the waiver and the possible credit. She also notes that their petition did not include the CIB benefits in calculating Andrew's income.

In *Miller*, we reasoned that social security benefits are earnings derived from the parent's past social security contributions.[3] We held that such benefits should be counted as the contributing parent's income for purposes of calculating income under Alaska Civil Rule 90.3 and that the parent is entitled to child support credit for those payments the child receives.[4] In *Pacana v. State, Department of Revenue, Child Support Enforcement Division*, we extended the holding in *Miller* and read Rule 90.3(h)(2) "to allow an automatic credit against child support arrearage for CIB.... Because the CIB payments are regular monthly payments and the custodial parent is aware of them, they can be credited against a child support obligation."[5] In *Hermosillo v. Hermosillo*, we held that the lower court erred by not crediting CIB payments when it calculated the child support arrearages.[6]

Mary asserts that *Miller* and its progeny do not apply here because they did not involve obligors who, after learning of the right to a credit for CIB payments, agreed to forgo the credit. She argues that Andrew is bound by his agreement to pay monthly child support of $896 regardless of the CIB payments.

Andrew argues that the dissolution petition incorporated no waiver because it did not explicitly or impliedly address waiver and neither party mentioned a waiver at the dissolution hearing. He asserts that the parties intended the petition to be their entire agreement. Andrew argues that "it is appropriate to consider all of the available evidence surrounding the alleged waiver." He does not dispute the existence of his handwritten note. He contends that we should interpret the petition's silence on waiver to mean that the parties never agreed to any waiver, given that AS 25.24.210(e) requires a dissolution petition to "state in detail the terms of the agreement between the spouses." Andrew asserts that no evidence suggests that the superior court did not consider the note when it stated that it was "not convinced Mary's motion is meritorious." Andrew argues that because the lower court did not find that Andrew waived the CIB credit, *Miller* and our later CIB credit cases mandate that he receive the credit.

We review a superior court's factual determinations for clear error,[7] and its legal determinations regarding dissolution agreements and other contracts de novo.[8] But we cannot tell here whether the court was resolving a factual dispute or whether it was ruling solely as a matter of law. We exercise our independent judgment in determining whether there were genuine, material factual disputes that could not be resolved without an evidentiary hearing.[9]

It is not clear from the orders or the procedural context why the superior court denied Mary's motion seeking an order declaring that Andrew had waived a credit for the CIB payments and her subsequent motion for reconsideration. There are several possibilities.

The superior court may have ruled without reaching the question whether Andrew waived a credit. Given its reliance on para-

**3.** *Id.* at 578.

**4.** *Id.* at 575, 578.

**5.** 941 P.2d 1263, 1266 (Alaska 1997).

**6.** 962 P.2d 891, 894 (Alaska 1998).

**7.** *Knutson v. Knutson*, 973 P.2d 596, 599 (Alaska 1999).

**8.** *Id.* (holding that interpretation of parties' dissolution agreement is question of law which appellate court reviews exercising its independent judgment).

**9.** *Beaudoin v. Beaudoin*, 24 P.3d 523, 526 (Alaska 2001) (citing *Acevedo v. Burley*, 944 P.2d 473, 476 n. 2 (Alaska 1997)).

graph seven of Mary's March 18, 1998 affidavit, it may have reasoned that Mary had already conceded that a credit was required, notwithstanding a waiver. It may have reasoned that the alleged waiver predating *Miller* and our subsequent CIB decisions either would have been invalid or could not have been knowing. Or it may simply have interpreted the petition and order not to preclude Andrew's claim for the credit CSED ultimately granted him.

Alternatively, the court may have reached the waiver issue, but resolved it against Mary. Thus, it may have accepted Andrew's arguments that the parties' September 1994 petition contained no waiver, and that the August note was at most a waiver offer that was not incorporated into the September petition. Or it may have reasoned that Mary failed to establish that there was a genuine factual dispute, perhaps because it deemed Mary's evidence of waiver to be inadmissible. Or it may have concluded, based on the evidence, that Andrew did not waive any right to a credit.

■ If any one of these possibilities justified denial of Mary's motion without an evidentiary hearing, we would be reluctant to reverse.[10] But because the purely legal issues do not compel affirmance and because there appear to be genuine, material factual disputes that could not be resolved against Mary as a matter of law, we reverse.

It is undisputed that Andrew would have been entitled to credit for the CIB payments, absent a waiver.[11] Mary submitted Andrew's note and asserted that it "shows [Andrew] understood his right to an offset and his *waiver* of that right at that time." In response, Andrew offered no evidence other than the parties' dissolution petition. On appeal, Andrew does not direct us to any other evidence relevant to the dispute. He does not dispute the existence of the written note and does not affirmatively deny that

there was a waiver. Finally, he does not argue that no waiver could have been valid or that no pre-*Miller* waiver could have been knowing.

We assume for purposes of this appeal that Andrew wrote and sent the note, that he could have waived a credit for CIB payments, and that he could have committed to pay a specified amount of child support notwithstanding the possibility he might have been entitled to a credit. And given the evidence that Andrew obtained information from the social security agent, we also assume that a court could find that a waiver was knowing and therefore valid. *Miller* and our subsequent CIB cases did not consider whether the right to the credit had been waived and they did not involve obligors who had received advice from a social security administrator, permitting an inference that the waiver was knowing.

Given these assumptions, we must remand for consideration of Mary's waiver claim. We first conclude that she raised a genuine factual dispute about whether Andrew knowingly waived receiving a child support credit for the CIB payments. This dispute could not be resolved against Mary as a matter of law.

■ We also conclude that the dispute was material, because extrinsic evidence of waiver and the parties' contracting intentions was relevant to interpreting the child support agreement in which Andrew agreed to pay monthly support of $896 and which identified no grounds for a credit. We discern no reason why the superior court was precluded from considering the handwritten note. Because the note was not inconsistent with the integrated petition, considering it would not have violated contract interpretation or parol evidence principles.[12]

■ The duration and scope of Andrew's alleged waiver may be subject to dispute on

---

10. *See Epperson v. Epperson,* 835 P.2d 451, 453 (Alaska 1992) (holding hearing not required if no relevant fact disputes).

11. *See supra* text accompanying notes 4–7 discussing *Miller* and its progeny.

12. *See Alaska Diversified Contractors, Inc. v. Lower Kuskokwim Sch. Dist.,* 778 P.2d 581, 583–84 (Alaska 1989) (explaining parol evidence rule); *Jackson v. Nangle,* 677 P.2d 242, 247–48 (Alaska 1984) (examining extrinsic evidence to resolve question of contracting intent where contract silent as to disputed issue).

remand. Mary requested a "finding that Andrew waived any credit to his child support payments from social security payments his daughter received from November 1994 to September 1997." Mary opposed any credit for the CIB payments from November 1994 until September 1997 (when Aniela turned eighteen and the payments ended). She arguably also opposed any attempt by Andrew to offset the CIB payments against his future support payments he had conditionally agreed to pay until Aniela turned twenty-two. Even if Andrew was not entitled to a credit against support he owed before he moved to modify his child support obligation in January 1998, it is not clear that his waiver was irrevocable or would preclude an offset against payments he would owe in the future. The handwritten note expresses a willingness to pay the specified amount without receiving a credit. Although it may imply an irrevocable waiver, it does not express an irrevocable waiver, and it does not expressly relinquish any future claim for a credit or an offset.

It is therefore necessary on remand to consider whether the note was evidence of voluntary waiver. If it was, what was the scope and duration of that waiver? Did it forever preclude Andrew from seeking CIB credit? Or did it simply reflect his revocable willingness to forgo a credit, without precluding him from moving for a modification in the future? If that is the case, the court may also have to consider whether there has been a change in circumstances sufficient to justify a reduction in Andrew's payments, and whether our issuance of *Miller* was a change of the law which would amount to a change in circumstances.[13]

Finally, we note that a finding that a waiver was limited—i.e., that it was revocable and did not preclude an offset against post-January 1998 support payments—could give rise to a claim that Mary reasonably relied on the waiver to her detriment, estopping Andrew from seeking an offset against future payments.[14]

## IV. CONCLUSION

For these reasons, we REVERSE the denial of Mary's motion requesting an order finding that Andrew waived any claim for a credit or offset for the CIB payments, and REMAND for further proceedings.

MATTHEWS, Justice, not participating.

---

**13.** *See Bunn v. House,* 934 P.2d 753, 758 (Alaska 1997) (explaining that both factual changes as well as changes in law may constitute material changes of circumstances justifying modification of child support); *Charlesworth v. State, Child Support Enforcement Div.,* 779 P.2d 792, 793 (Alaska 1989) (concluding that adoption of Civil Rule 90.3 constitutes material change of circumstances).

**14.** *See Cizek v. Concerned Citizens of Eagle River Valley, Inc.,* 41 P.3d 140, 145 n. 14 (Alaska 2002) ("The defense of estoppel has four elements: (1) A party substantially changes position; (2) in reliance on a promise made by another; (3) the reliance was either actually foreseen or reasonably foreseeable; and (4) enforcement of the promise is necessary in the interests of justice." (citation omitted)).