*In re* MARRIAGE OF LYNDA L. DiFATTA, Petitioner and Counterrespondent-Appellant, and JOSEPH V. DiFATTA, Respondent and Counterpetitioner-Appellee.

Second District   No. 2—98—0511

Opinion filed July 29, 1999.

Coleen A. Blake and Dorothy B. Johnson, both of Johnson & Associates, P.C., of Chicago, for appellant.

Randy K. Johnson, of Law Office of Robert A. Chapski, Ltd., of Elgin, for appellee.

JUSTICE COLWELL delivered the opinion of the court:

Petitioner, Lynda L. DiFatta, appeals from the circuit court of Du Page County's judgment for dissolution of marriage. On review, we

address the following issues: (1) whether petitioner is barred from receiving maintenance from respondent, Joseph V. DiFatta, pursuant to the parties' antenuptial agreement; (2) whether the proceeds from a life insurance policy and from petitioner's personal injury settlement were marital property and, if so, whether petitioner improperly dissipated them; and (3) whether the trial court properly determined that under the parties' antenuptial agreement respondent was entitled to sole possession of his pension. We are also asked to determine the amount of child support that respondent overpaid.

## BACKGROUND

Petitioner and respondent were married on July 23, 1983. Three days prior to the marriage, the parties executed an antenuptial agreement. The agreement, which was prepared by petitioner's counsel, was executed to settle "all property rights *** and *** all matters of maintenance and support." On September 8, 1992, the only child of the marriage, Taylor DiFatta, was born. On October 23, 1995, petitioner filed a petition for a legal separation. On January 3, 1996, respondent filed a counterpetition for the dissolution of marriage.

The evidence at trial, which commenced August 14, 1997, revealed that during the marriage the parties resided in a house located in Bartlett, Illinois. Petitioner had been awarded the house pursuant to a judgment of dissolution from a prior marriage. Before her marriage to respondent, petitioner alone paid the mortgage for the house. However, respondent testified that after their marriage he contributed funds to help pay the mortgage. In August 1990, the parties refinanced the home and changed ownership in the house to a joint tenancy. In 1993, the parties changed the form of ownership to a tenancy by the entirety.

Petitioner did not hold down a full-time position while she was married to respondent. Although she did work part time at several different positions, respondent asked her not to work outside the marital home. Thereafter, petitioner worked solely as a homemaker. At the time of the marriage, respondent was employed as a truck driver. However, he later found work as an electrician and became a member of the Illinois Brotherhood of Electrical Workers (IBEW). As a member of the IBEW, respondent was eligible to participate in the IBEW's pension plan.

On December 3, 1997, the circuit court entered a judgment dissolving the marriage. The court determined that the antenuptial agreement between the parties was valid and binding; that under the antenuptial agreement petitioner was not entitled to maintenance from respondent; that petitioner had dissipated two marital assets, the proceeds from a life insurance policy and from a personal injury settlement; that respondent was entitled to a credit for overpayment of

child support; and that respondent's IBEW pension was his sole and separate property.

A joint parenting agreement was entered at the same time as the judgment for dissolution of marriage. This agreement required respondent to pay $130 per week in child support. However, the support order temporarily reduced that amount to $100 per month for a period of eight years in light of the fact that respondent had overpaid child support and petitioner had dissipated marital assets. Respondent was awarded the income tax dependency exemption for the minor child.

On January 5, 1998, petitioner filed a motion for the modification of judgment of the dissolution of marriage and joint parenting agreement. In her motion, petitioner claimed, *inter alia*, that she was entitled to maintenance; that she did not dissipate any marital assets; that respondent was not entitled to sole possession of the IBEW pension; and that the trial court incorrectly calculated the credit due respondent for the overpayment of child support. Petitioner also sought reconsideration of the determination of respondent's net income for child support purposes and the decision to award respondent the dependency exemption for income tax purposes. The trial court dismissed petitioner's motion on March 20, 1998, and she timely appealed.

## ANALYSIS
### I. Antenuptial Agreement
The material in this section is nonpublishable under Supreme Court Rule 23 (166 Ill. 2d R. 23).

### II. Dissipation of Assets
The material in this section is nonpublishable under Supreme Court Rule 23 (166 Ill. 2d R. 23).

### III. Pension
The material in this section is nonpublishable under Supreme Court Rule 23 (166 Ill. 2d R. 23).

### IV. Child Support
We now determine the amount, if any, that respondent overpaid in child support. The trial court calculated that respondent overpaid by $5,490.69. Petitioner contests that amount, asserting that respondent overpaid child support only in the amount of $2,582.03. Respondent, on the other hand, claims that he overpaid child support in the amount of $3,239.56. In order to resolve this issue, we summarize the procedural history of the case in relation to child support.

On February 7, 1996, petitioner filed a petition for temporary custody, support, and other relief. On September 5, 1996, the trial

court issued an order setting child support at the statutory 20% of respondent's net monthly income of $3,437.85, or $687.57 per month. 750 ILCS 5/505(a)(1) (West 1996). The court also awarded petitioner $1,292.43 per month as additional child support to pay the mortgages on the Bartlett, Illinois, home. Thus, the court ordered respondent to pay child support in the amount of $1,980 per month, retroactive to September 3, 1996.

On September 16, 1996, respondent filed a motion for reconsideration of the trial court's September 5, 1996, order. In his motion, respondent complained that the money awarded for the payment of the mortgages on the marital home was in the nature of maintenance. Respondent also claimed that by classifying the money for the mortgages as child support the court deprived him of certain tax benefits he would receive had the court labeled the funds as maintenance. In any event, respondent contended that the trial court's award of $1,980 per month in child support was excessive because it amounted to 58% of his net monthly income.

Also on September 16, 1996, the trial court entered a support order requiring respondent to pay $461 per week in child support. The start date of the support was retroactive to September 3, 1996.

On September 26, 1996, respondent filed a motion to modify the temporary order of support. Respondent prayed for a reduction in the amount of child support due to an injury he allegedly sustained at work. In the motion, respondent averred that his only source of income was worker's compensation benefits in the amount of $710 per week.

On November 20, 1996, the trial court entered an agreed order "pursuant to notice on defendant's motion to modify support" which set a hearing for "all pending pleadings" on January 7, 1997. The hearing was subsequently continued on several occasions until the trial began on August 14, 1997.

On December 3, 1997, the trial court entered the order of dissolution. In that order, the trial court calculated that respondent should have paid the following amounts in child support:

"From September 26, 1996, through January 6, 1997, the sum of $142.50 per week;

From January 6, 1997, through July 1, 1997, the sum of $198.40 per week;

From July 1, 1997, through the date of Judgment of Dissolution of Marriage [December 3, 1997], the sum of $200.00 per week, or a total of $10,042.50."

■ Petitioner's first contention of error is that the trial court committed an arithmetical error when the court determined that the amount of child support that respondent was required to pay between

September 26, 1996, and December 3, 1997, was $10,042.50. Respondent concedes such error, and we agree.

In calculating the amount of child support due, we have counted the first day of each period but excluded the last day of each period. A proper calculation shows that respondent should have paid the following amount in child support between September 26, 1996, and December 3, 1997:

From September 26, 1996, to January 6, 1997, the sum of $142.50 per week for 14$4/7$ weeks, or $2,076.43;

From January 6, 1997, to July 1, 1997, the sum of $198.40 per week for 25$1/7$ weeks, or $4,988.34;

From July 1, 1997, to the date of Judgment of Dissolution of Marriage (December 3, 1997), the sum of $200 per week for 22$1/7$ weeks, or $4,428.57.

Therefore, respondent should have paid a total of $11,493.34 in child support during this period.

Petitioner also claims that the trial court did not take into consideration the amount of child support due between September 3, 1996, and September 26, 1996 (the date respondent filed his motion to modify the temporary order of support). According to petitioner, respondent was liable for child support in the amount of $461 per week during this period. Since the trial court did not consider this amount in calculating the overpayment of child support, the respondent's overpayment should be reduced accordingly.

Respondent concedes that he should have paid $461 per week in child support beginning September 3, 1996. However, respondent argues that this obligation ceased on September 16, 1996 (the date that respondent filed his motion to reconsider the support obligation), not September 26, 1996.

Past-due child support payments that accrue prior to the filing of a petition for modification constitute a vested and unmodifiable right. *In re Marriage of Ingram*, 259 Ill. App. 3d 685, 691 (1994); *In re Marriage of Macino*, 236 Ill. App. 3d 886, 890 (1992); see 750 ILCS 5/510(a) (West 1996). Therefore, respondent was obligated to pay $461 per week in child support until September 26, 1996, the date he filed his motion for modification. Indeed, on the day that the trial judge entered the judgment of dissolution, he commented that "there was no change [in child support] until September 26th." Thus, during the period from September 3, 1996, to September 26, 1996, respondent should have paid $461 per week for 3$2/7$ weeks, or $1,514.71.

In sum, we conclude that from September 3, 1996, until December 3, 1997, respondent was required to pay $13,008.05 in child support. According to the record, respondent actually paid $15,533.19 during

the period in question. Therefore, respondent is entitled to a credit of $2,525.14 for the overpayment of child support.

Petitioner has raised three child-support-related arguments, which we now address. First, petitioner argues that the trial court improperly averaged respondent's work history over a period of 10 years to arrive at a child support obligation based on a 32-hour work week. According to petitioner, the resultant $130 per week in child support that the court ordered respondent to pay is below the minimum 20% of the payor's net income as required by statute. Respondent maintains that the trial court did not abuse its discretion in setting child support.

■ The findings of a trial court as to income and the awarding of child support are within the discretion of the trial court and will not be disturbed on review absent an abuse of discretion. *In re Marriage of Freesen*, 275 Ill. App. 3d 97, 103 (1995). In *Freesen*, the court determined that it was proper to use an income-averaging approach in determining the amount of a noncustodial parent's child support obligation where the noncustodial parent's income varies significantly from year to year. *Freesen*, 275 Ill. App. 3d at 104.

■ In this case, respondent presented evidence that he was an hourly employee and that the hours he worked varied significantly from year to year. Over a 10-year period, the number of hours respondent worked each year varied from a low of 815 hours in 1989 to a high of 2,146½ hours in 1995. Respondent explained that these significant fluctuations are due to the seasonal nature of the construction business. We realize that averaging the number of hours worked each week is different from income-averaging based on a yearly income. However, since, in this case, respondent's salary was based on the number of hours per week that he worked, we find the two situations analogous.

Based on this evidence, we cannot say that the trial court abused its discretion in using an average of the number of hours that respondent worked to determine his child support obligation. In addition, we note that petitioner contends that the actual amount of child support awarded is below the statutory guidelines. However, the trial court specifically found that the child support awarded amounted to slightly over 20% of respondent's net income

Petitioner's reliance on *In re Marriage of Schroeder*, 215 Ill. App. 3d 156 (1991), is misplaced. In *Schroeder*, the court determined that the income-averaging approach was improper because the payor's income did not vary significantly from year to year.

■ Second, petitioner complains that the trial court should not have awarded respondent the income tax dependency exemption for their minor child because she contributes the majority of the child's

support. Respondent claims that, since petitioner was unemployed at the time the dissolution judgment was entered, he was the only parent providing the parties' minor child with support. Thus, he was properly awarded the dependency tax exemption.

The decision as to which parent to award the income tax dependency exemption will not be reversed absent an abuse of discretion. *In re Marriage of Fowler*, 197 Ill. App. 3d 95, 100 (1990). The exemption should be awarded to the parent who will contribute the majority of the child's support. *In re Marriage of Clabault*, 249 Ill. App. 3d 641, 650 (1993); *In re Marriage of Rogliano*, 198 Ill. App. 3d 404, 415 (1990).

As respondent points out, at the time that the dissolution judgment was entered, he was the only parent employed. We note that, except for bare assertions, petitioner has not provided us with any evidence that respondent has not contributed a majority of the minor child's support. As a result, we cannot conclude that the trial court abused its discretion in granting respondent the income tax dependency exemption.

■ Third, petitioner complains that the trial court erred in awarding respondent credit for the marital property she dissipated and the child support respondent overpaid by temporarily reducing respondent's child support obligation by $30 per week. Petitioner claims that the trial court did not consider the statutory guidelines provided in section 505(a)(2) of the Act. 750 ILCS 5/505(a)(2) (West 1996). Respondent replies that, although the trial court did not consider the factors listed in section 505(a)(2) of the Act, the court is permitted to consider nonlisted factors. In this case, the court considered the fact that he overpaid child support and that petitioner dissipated marital assets.

Section 505(a)(1) of the Act provides that, in the case of one child, the minimum amount of child support that the trial court shall order is 20% of the noncustodial parent's net income. 750 ILCS 5/505(a)(1) (West 1996). The trial court may deviate from the guidelines listed in section 505(a)(1) only if it:

"consider[s] the best interests of the child in light of evidence including but not limited to one or more of the following relevant factors:

(a) the financial resources and needs of the child;

(b) the financial resources and needs of the custodial parent;

(c) the standard of living the child would have enjoyed had the marriage not been dissolved;

(d) the physical and emotional condition of the child, and his educational needs; and

(e) the financial resources and needs of the non-custodial parent.

If the court deviates from the guidelines, the court's finding shall state the amount of support that would have been required under the guidelines, if determinable. The court shall include the reason or reasons for the variance from the guidelines." 750 ILCS 5/505(a)(2) (West 1996).

When determining whether to deviate from the statutory guidelines, a trial court's consideration of the factors set forth in section 505(a)(2) of the Act is mandatory, not discretionary. *In re Marriage of Singleteary*, 293 Ill. App. 3d 25, 36 (1997). In addition, the trial court must make express findings when it orders child support that is below the statutory minimum. *Singleteary*, 293 Ill. App. 3d at 36.

In this case, the order setting child support granted respondent a credit of $30 per week for the dissipation of marital assets by petitioner and for the overpayment of child support by respondent. However, the record is devoid of any indication that the trial court considered the factors listed in section 505(a)(2) of the Act. While we agree that respondent is entitled to a credit for the dissipation of marital property and for the overpayment of child support, we hold that the trial court erred in reducing the child support award based solely on its findings that petitioner dissipated marital assets and that respondent overpaid child support.

On remand, the trial court shall determine the most equitable method to reimburse respondent for petitioner's dissipation of the marital property and his overpayment of child support. We have been unable to find any authority that would permit the trial court to reduce a payor spouse's child support obligation on the basis that the payee spouse improperly dissipated marital property. In addition, based on the facts in this case, we find that the dissipation of marital property by petitioner does not fall within any of the factors permitting a deviation from the statutory child support guidelines. 750 ILCS 5/505(a)(2) (West 1996). Therefore, the trial court shall not reduce respondent's child support obligation on the basis that petitioner dissipated marital property.

While the court may, on remand, reduce respondent's child support obligation based on his overpayment of child support, the court must ensure that the reduction does not work a deprivation on the minor child. See *In re Marriage of Tollison*, 208 Ill. App. 3d 17, 20-21 (1991). In addition, in awarding respondent credit for the overpayment of child support, the trial court shall use the figure calculated by this court.

## CONCLUSION

In conclusion, we hold that, pursuant to the antenuptial agree-

ment, petitioner was not entitled to maintenance. Further, we conclude that petitioner dissipated the proceeds she received from the life insurance policy and from the personal injury settlement. We also determine that under the terms of the antenuptial agreement respondent is entitled to sole ownership of his IBEW pension. We remand this cause to the trial court to determine the best method to determine how to award respondent compensation for the dissipation of marital property by petitioner and for his overpayment of child support.

The judgment of the circuit court of Du Page County is affirmed in part and reversed in part, and the cause is remanded with directions.

Affirmed in part and reversed in part; cause remanded with directions.

GEIGER and THOMAS, JJ., concur.