THOMPSON, Presiding Judge.
Michael Gregory Wicker ("the father") appeals from a judgment that the Tuscaloosa Circuit Court ("the trial court") entered denying his petition for a modification of his child-support obligation and for the termination of an income-withholding order ("IWO"). The petition was based on his assertion that he had paid his child-support obligation in full.
The record indicates the following. The parties have two children ("the children"). According to the parties' divorce judgment entered in March 2005, the parties were awarded joint custody of the children, and no child support was ordered at that time. On November 26, 2008, the trial court entered a judgment ("the 2008 modification judgment") modifying the custody arrangement and awarding Jennifer Wicker Hallman ("the mother") sole physical custody of the children, subject to the father's visitation. The trial court also ordered the father to pay child support of $900 each month. On January 8, 2009, the mother filed an affidavit of arrearage, claiming that, between December 3, 2008, and January 4, 2009, the father had not paid his entire child-support obligation and that an arrearage of $1,430.76 was due. Also on January 8, 2009, an IWO was issued pursuant *629 to which a total of $1,100 was collected from the father each month-$900 for his child-support obligation and $200 to pay toward his arrearage. It is undisputed that the mother received the full $1,100 each month.
The record shows that the full $1,100 was still being withheld from the father's income in 2016. In March 2016, the father requested that the IWO be terminated. However, he withdrew that request, and on April 27, 2016, he filed a petition to modify child support. On June 27, 2016, the IWO was suspended pending the final hearing in this matter.
In an affidavit dated October 6, 2016, which the father submitted to the trial court, the father testified that he had not received notice of the mother's affidavit of arrearage and had not seen the IWO issued on January 8, 2009. He also said that he did not notice that too much was being deducted from his paycheck for his child-support obligation until his attorney notified him of that fact at the end of 2015. On November 9, 2016, the father filed a motion for a summary judgment. The father claimed that he had never been in arrears, and he sought the termination of the IWO and the modification of child support. He calculated that he had overpaid his child-support obligation by at least $16,800 from January 2009 to March 2016. The mother opposed the father's motion for a summary judgment, asserting that, each month, the father had voluntarily paid more than the amount of child support he was required to pay.
On November 21, 2016, the trial court heard arguments on the father's motion for a summary judgment. At the hearing, the father argued that, if he had known of the mother's contention that he was in arrears, he would have opposed it. He then went on to argue that he was entitled to a credit for the amount of child support he had overpaid. The trial court never ruled on the motion for a summary judgment and scheduled a hearing on the merits.
On December 19, 2016, a final hearing at which the trial court received evidence ore tenus was held on the father's motion to modify child support.[1] At that hearing, the father testified that, in March 2016, after one of the children had reached the age of majority, he consulted his attorney to have his child-support obligation modified. He said that during that consultation was when he first became aware that he was paying more child support than the court had ordered in the 2008 modification judgment. The father said that he had not paid the additional $200 a month willingly. Under cross-examination, the father testified that he was aware that $1,100 was being withheld from his paycheck each month from January 2009 through the date he filed his petition for child-support modification. However, the father said, he did not know he was overpaying his child-support obligation. However, still under cross-examination, the father testified that he knew that, in the 2008 modification judgment, the trial court had ordered him to pay $900 a month in child support. He also reiterated that, since January 2009, he knew that $1,100 was being collected from his paycheck each month and that that was $200 a month more than he had been ordered to pay. Still, the father said, he did not know it was an overpayment. He said that he "thought the State was taking out what it was supposed to take out."
On December 27, 2016, the trial court entered a judgment modifying the father's *630 child-support obligation to $836 each month. The child support was for the one child who was still a minor. The trial court also denied the father's request for a credit against his current child-support obligation for the amount he had overpaid from 2009 through April 2016, when the modification petition was filed. The trial court also ordered the father to pay the arrearage that had accrued since the IWO was suspended in June 2016. That arrearage totaled $3,871.33 as of the date the judgment was entered. The father timely appealed from the trial court's judgment.
The standard of review applicable for this appeal is well established.
" 'When a trial court hears ore tenus evidence, its judgment based on facts found from that evidence will not be disturbed on appeal unless the judgment is not supported by the evidence and is plainly and palpably wrong. Thrasher v. Wilburn, 574 So.2d 839, 841 (Ala. Civ. App. 1990). Further, matters of child support are within the sound discretion of the trial court and will not be disturbed absent evidence of an abuse of discretion or evidence that the judgment is plainly and palpably wrong. Id.'
" Spencer v. Spencer, 812 So.2d 1284, 1286 (Ala. Civ. App. 2001). However, the trial court's application of law to facts is reviewed de novo. See Ladden v. Ladden, 49 So.3d 702, 712 (Ala. Civ. App. 2010)."
Jones v. Jones, 101 So.3d 798, 802 (Ala. Civ. App. 2012). Furthermore, "[t]he ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses." Hall v. Mazzone, 486 So.2d 408, 410 (Ala. 1986). The rule applies to disputed issues of fact, whether the dispute is based entirely upon oral testimony or upon a combination of oral testimony and documentary evidence. Born v. Clark, 662 So.2d 669, 672 (Ala. 1995).
In this case, the father contends that the trial court abused its discretion when it refused to give him credit against future child-support payments for the amount of child support he had overpaid. This appears to be a case of first impression in Alabama. In her arguments to the trial court, the mother cited authority from other jurisdictions to support her position that the father had voluntarily overpaid the amount of child support that was due each month and, therefore, that he was not entitled to a credit against future child-support payments.
Our review of decisions from other jurisdictions indicates that the prevailing rule is that a parent who has voluntarily exceeded the amount of payments owed on his or her child-support obligation is not entitled to a credit or setoff against future child-support payments. The Michigan Court of Appeals succinctly set forth the prevailing rule and the rationale behind the rule in Pellar v. Pellar, 178 Mich.App. 29, 443 N.W.2d 427 (1989). In addressing whether overpayments of child support should be applied as a credit against future support obligations, the Pellar court wrote:
"The majority view of other jurisdictions is that the support obligor is not entitled to a credit as a matter of law for voluntary overpayments made prior to those obligations sought to be offset by the overpayments. See Anno: Right to credit on accrued support payments for time child is in father's custody or for other voluntary expenditures, 47 A.L.R.3d 1031, § 15, pp. 1055-1057. The rationale underlying the general rule is aptly stated in Harner v. Harner, 105 Ill.App.3d 430, 433, 61 Ill.Dec. 312, 434 N.E.2d 465 (1982):
*631 " 'The general rule is that payments made for the benefit of children which are voluntary and not pursuant to a divorce decree may not be credited against other amounts due under the decree. This is true even where, as here, the payments are made under the mistaken belief that they are legally required. The policy underlying this rule is to prevent the supporting parent from, in effect, unilaterally modifying the support decree and thereby affecting the expectations of the custodial parent as to support payments.' [Citations omitted.]
"In Haycraft v. Haycraft, 176 Ind.App. 211, 215-216, 375 N.E.2d 252 (1978), the court refused to recognize an overpayment credit, reasoning as follows:
" 'Since [the parties] had no power to modify the terms of the original support order by means of an extrajudicial agreement, any excess payment made under that supposed agreement had to be considered a gratuity or at least a voluntary contribution for the support of the children, and not a prepayment of future support obligations. If noncourt approved prepayments, such as those which Dudley suggests, were to be permitted, it would be possible for a parent, who is obligated to pay support, to build up a substantial credit, then suddenly refuse to make support payments for several weeks, months, or even years, thus thwarting the court's purpose in setting the payments at certain specified intervals, that of providing regular, uninterrupted income for the benefit of that parent's children, who are in the custody of another. The regularity and continuity of court decreed support payments are as important as the overall dollar amount of those payments.'
"We find ourselves in substantial agreement with the foregoing authorities and conclude that the rule against allowing a credit for voluntary overpayments is consistent with the policies underlying child support obligations pursuant to Michigan law. Child support is not imposed for the benefit of the custodial parent, but rather to satisfy the present needs of the child. Haefner [v. Bayman] 165 Mich.App. [437,] 444, 419 N.W.2d 29 [ (1988) ]. The needs of the child are of overriding importance, and the courts strive to protect the child from any adverse effects caused by the obligor parent's unilateral disruption or suspension of periodic support payments, even when the obligor parent is attempting to vindicate some right violated by the other parent having custody of the child. For instance, it has been held that the supporting noncustodial parent's recognized right to exercise visitation may not be sought to be enforced when wrongfully denied by suspending support payments if the result is that the interests of the child would be adversely affected. See Richardson v. Richardson, 122 Mich.App. 531, 533, 332 N.W.2d 524 (1983). It is apparent that the purpose of structuring support in terms of periodic payments for the duration of the child's minority is to ensure that the child's needs are met on an ongoing, continuing basis. We hold that voluntary overpayments, even if made under a mistaken belief as to their legal consequences, do not create a credit against or otherwise serve to diminish the amount of the obligor's subsequent court-ordered obligations. To hold otherwise would create an unacceptable possibility of jeopardizing the child's right to receive support for his or her needs."
Pellar, 178 Mich.App. at 33-36, 443 N.W.2d at 429-30 (footnote omitted).
*632 In Mayfield v. Mayfield, 103 So.3d 968 (Fla. Dist. Ct. App. 2012), the former husband voluntarily made additional payments for the benefit of the children. He testified that he made the payments to build up a buffer in case he was not able to always make his court-ordered child-support payments. However, the former husband had not told the former wife that the payments were intended as an advance on his future support. The trial court in that case also found that it would be an "undue hardship" on the children and the former wife to allow the former husband a credit or repayment of the additional support payments because, the trial court stated, " 'the money is [not] sitting anywhere to be spent now' and the children 'cannot presently benefit from the prior overpayment.' " Id. at 971. The Florida appellate court held that, under the circumstances of Mayfield, the trial court had abused its discretion in allowing the former husband a credit for the excess support he had voluntarily paid against his future child-support obligation. Id. See also Reach v. Owens, 260 Ga. 227, 227, 391 S.E.2d 922, 923 (1990) (noting that the general rule in Georgia is that the noncustodial parent has no right to a credit for the voluntary overpayment of child support without the consent of the custodial parent).
Even if a jurisdiction does allow a credit for overpayment of child support, before such a credit can be applied, the court must ensure that the needs of the child are met first. See, e.g., In re Marriage of DiFatta, 306 Ill.App.3d 656, 664, 714 N.E.2d 1092, 1097, 239 Ill.Dec. 795, 801 (1999) ("While the court may, on remand, reduce respondent's child support obligation based on his overpayment of child support, the court must ensure that the reduction does not work a deprivation on the minor child.").
Upon consideration, we agree with the analysis set forth by the Court of Appeals of Michigan in Pellar, supra. Alabama, like Michigan, recognizes that child support is intended to meet the child's ongoing needs such that a parent's child-support obligation cannot be waived.
"A child has a fundamental right under our law to support from that child's parents that the parents themselves cannot waive. State ex rel. Shellhouse v. Bentley, 666 So.2d 517 (Ala. Civ. App. 1995). 'All minor children have a fundamental right to parental support and that right is deemed to be a continuing right until the age of majority.' Ex parte State ex rel. Summerlin, 634 So.2d 539, 541 (Ala. 1993) ; see also Bank Independent v. Coats, 591 So.2d 56, 60 (Ala. 1991) ('[T]he public policy of this state [provides] that parents cannot abrogate their responsibilities to their minor children by mutual agreement between themselves so as to deprive their minor children of the support to which they are legally entitled.')."
Hawkins v. Cantrell, 963 So.2d 103, 105-06 (Ala. Civ. App. 2007). Accordingly, we now adopt the following rationale and holding of the Court of Appeals of Michigan in Pellar:
"[V]oluntary overpayments, even if made under a mistaken belief as to their legal consequences, do not create a credit against or otherwise serve to diminish the amount of the obligor's subsequent court-ordered obligations. To hold otherwise would create an unacceptable possibility of jeopardizing the child's right to receive support for his or her needs."
178 Mich.App. at 36, 443 N.W.2d at 430.
The father in this case contends that he did not voluntarily overpay his child-support obligation. He testified that he believed that, in withholding money from his paycheck pursuant to the IWO
*633 for child support, the state was collecting the proper amount of support. However, he also testified unequivocally that he knew his court-ordered child-support obligation was $900 each month and that $1,100 was being withheld from his pay each month. He allowed the overpayment to continue for seven years. There was no evidence indicating the mother knew that the father had not intended to provide an additional $200 of child support each month. We conclude that the evidence supports the trial court's determination that the father's overpayment was voluntary. Jones, 101 So.3d at 802. Moreover, we have already held in this opinion that voluntary overpayments made under a mistaken belief as to their legal consequences cannot be used as a credit against future child-support payments.
For the reasons set forth above, we conclude that, as a matter of law, the father was not entitled to a credit for his overpayment of child support. As other jurisdictions have noted, to hold otherwise would risk the possibility that a minor child's present and future needs could not be met, thus frustrating the purpose of child support. The judgment of the trial court is affirmed.
AFFIRMED.
Pittman, Thomas, and Donaldson, JJ., concur.
Moore, J., concurs in the result, without writing.

In the final judgment, the trial court noted that, by agreement of the parties, the transcript of the arguments made during the summary-judgment hearing were incorporated as part of the final hearing.