*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| MARK A. ROSENBAUM, | ) | |
| | ) | Supreme Court No. S-17061 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-02-12127 CI |
| v. | ) | |
| | ) | O P I N I O N |
| PAMELA SHAW, | ) | |
| | ) | No. 7430 – March 13, 2020 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Jennifer Henderson, Judge.

Appearances: Eva Gardner, Ashburn & Mason, Anchorage (limited appearance); Gavin Kentch, Law Office of Gavin Kentch, LLC, Anchorage, for Appellant; Mark A. Rosenbaum, pro se, Delray Beach, Florida, Appellant. Michael Gershel, Anchorage, for Appellee.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

STOWERS, Justice.

## I.    INTRODUCTION

This case involves an obligor father who never missed a child support payment to the obligee mother for their minor child. The father retired and began collecting Social Security retirement benefits. As a result, the child became eligible to receive a derivative monthly children's insurance benefit (CIB) from the Social Security

Administration (SSA).  The mother received four years of CIB payments in addition to regular monthly child support payments from the obligor; the law allows the CIB payments to be credited against the child support obligation.  However, neither parent notified the Alaska Department of Revenue, Child Support Services Division (CSSD) that they were receiving CIB payments for their daughter.  After four years of overpayments, CSSD discovered the CIB payment from SSA and credited the father more than $47,000 in child support overpayment.

The father filed suit, asking the superior court for a judgment against the mother for overpaid child support.  He also requested reimbursement or credit for overpaid health insurance premiums. The superior court denied reimbursement for either overpayment.  The father appeals.  We conclude that the mother should retain the overpayments from the father, and we affirm the superior court on this issue; we also affirm its ruling declining to order reimbursement or credit for overpaid health insurance premiums.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Mark Rosenbaum and Pamela Shaw are the biological parents of a daughter, born August 2002.  Mark and Pamela separated before their daughter was born and were initially awarded joint legal and shared physical custody.  Mark has been paying child support to Pamela for most of the daughter's life.  Mark's child support payment included half of the cost of the daughter's health insurance.  Before this case Mark's child support payment was last modified in 2009.

In 2012 Mark retired and moved to Florida; the daughter remained with Pamela in Alaska.  In March Mark began receiving Social Security retirement benefits. Because of this the daughter became eligible to receive CIB payments, and Mark received and retained them on her behalf until 2014.  In 2014 Pamela learned of the CIB

payments, and upon her request SSA redirected future payments to her. Mark repaid SSA the money he had received on the daughter's behalf and these funds were paid to Pamela.

Mark continued to pay child support while Pamela was receiving CIB payments. He apparently was unaware that the CIB payments could be credited against his child support obligation until October 2016 when SSA notified CSSD of the CIB payments, and CSSD contacted Mark to inform him that he had an overbalance of $47,432. Pamela was also apparently unaware until late 2016 that CIB payments could be credited against Mark's child support obligation. Mark stopped paying child support in November 2016.

The child support order provided that Pamela "must purchase health insurance for the child because such insurance is available at reasonable cost through her employer, union or otherwise." The insurance cost was to be divided equally between the parties. In 2012 Pamela lost her job and was no longer able to provide health insurance for the daughter. Under such circumstances, the child support order provides that if insurance is available to one parent at a reasonable cost, that parent must purchase health insurance for the daughter. Pamela asked Mark to add their daughter to his insurance. Mark did so and in January 2013 began paying a monthly premium of $275.42 for the daughter's coverage. Pamela later stated that Mark never informed her that the daughter was on his insurance and never provided her with an insurance card for the daughter. Pamela subsequently enrolled the daughter in Denali KidCare,[1] and the daughter was enrolled until the summer of 2017 when, according to Pamela, she learned

---

[1] Denali KidCare "is an expansion of the Medicaid Program in Alaska" that provides coverage to children and teens who meet the income guidelines. *See Denali KidCare Alaska's Children's Health Insurance Program*, DIV. OF HEALTH CARE SERVS., http://dhss.alaska.gov/dhcs/Pages/denalikidcare/default.aspx (last visited Oct. 15, 2019).

that the daughter was covered under Mark's insurance plan. Mark stated that he told Pamela in January 2013 that he added the daughter to his health insurance, and he claimed that since June 2013 he had received notification of 18 claims that had been processed for the daughter's healthcare needs.

## B.    Proceedings

In August 2017 Mark filed a motion in superior court for entry of judgment to recover overpaid child support and health insurance premiums. He explained that CSSD had told him that it would collect the $47,432 overpayment from Pamela but needed a judgment from a court directing it to do so. He also contended that he was entitled to repayment from Pamela for half of the $275.42 monthly health insurance premiums he had been paying for the daughter's coverage since January 2013 — a total of $7,574.05.

Pamela opposed Mark's motion, arguing that the rule against retroactive modification of child support barred Mark's request for repayment of health insurance premiums. As to the child support overpayment, Pamela acknowledged that "a child support obligor is entitled to a dollar-for-dollar credit for CIB paid to a child" and that "previously uncredited CIB payments can be retroactively credited against the obligor's support arrears." But she argued that this court "has never authorized . . . an affirmative recovery of support payments resulting from the crediting of CIB payments." Pamela urged the superior court to conclude that "the overage resulting from the CIB payments should not be credited against subsequent months to reduce [Mark's] future obligation" and that "the overage does not create a right of recovery against [Pamela]."

Mark filed a reply brief and requested an evidentiary hearing. Mark explained that he wished to call a CSSD representative to describe the mechanics of the relevant administrative code — 15 Alaska Administrative Code (AAC) 125.475 — that he argued "clearly sets out [his] right to recover his out of pocket additional child support

payments." Pamela disagreed that an evidentiary hearing was necessary. The superior court scheduled oral argument and explained that it expected argument on the legal question of the "interpretation of the relevant code sections" pertaining to whether Mark could recover the overpayment, "not presentation of evidence."

Mark moved for reconsideration, arguing that the court was overlooking "the principle of judicial deference to agency interpretation and application of the statutes [the agency] operates under." Mark again requested an evidentiary hearing to present his witness from CSSD. Pamela opposed, arguing that CSSD's "view of the matter" should not be entitled deference and that whether Mark could recover the overpayment was the court's decision. In January 2018 the court denied Mark's motion for reconsideration, ruling that "[t]here is no ambiguity in 15 AAC 125.475 itself such that the Court requires further evidence regarding CSSD's interpretation of the code."

After holding oral argument the court denied Mark's request for a judgment for recovery of health insurance premiums and for recovery of his overpayment of child support. The court directed CSSD to "withdraw from its accounting of the child support account of [the daughter] the overpayment credit accorded to [Mark] that resulted from . . . the crediting of the CIB payments received on behalf of the minor child." The court ruled that CSSD should credit Mark for "*ongoing* CIB payments up to the amount of [Mark's] monthly child support obligation." (Emphasis in original.) The court explained that the majority approach of other state courts is not to allow recovery for past child support overpayments created by duplicative child support and CIB payments. The court also noted the "obvious concern surrounding an obligor parent building up a support credit to then subsequently decline to provide support in reliance on the overpayment, or to demand repayment." The court modified Mark's support obligation to $1,221 per month going forward based on his then-current income and purchase of health insurance for the daughter. It indicated that Mark "will only be responsible for

paying the amount by which his obligation exceeds [the daughter's] CIB payment." This appeal followed.

## III.   STANDARD OF REVIEW

The question whether to allow reimbursement or credit for an overpayment resulting from duplicative child support and CIB payments is a question of law we review de novo.[2]  Our duty under this standard is "to adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[3]  "The proper method of calculating child support is a question of law, which we review de novo . . . ."[4]

## IV.   DISCUSSION

### A.   The Superior Court Did Not Err By Determining That Mark Was Not Entitled To Reimbursement Or Credit For Child Support Overpayments.

The main question presented on appeal is whether Mark can recover through reimbursement or credit against future payments a $47,432 child support overpayment.[5]  As explained above, the superior court answered this question in the

---

[2]     *See Hermosillo v. Hermosillo*, 962 P.2d 891, 893 (Alaska 1998)*; Pacana v. State of Alaska, Dep't of Revenue, Child Support Enf't Div.*, 941 P.2d 1263, 1264 (Alaska 1997).

[3]     *Pacana*, 941 P.2d at 1264 (quoting *Barber v. Barber*, 915 P.2d 1204, 1209 n.10 (Alaska 1996)).

[4]     *Faulkner v. Goldfuss*, 46 P.3d 993, 996 (Alaska 2002).

[5]     The superior court recalculated Mark's child support obligation as $1,221 per month.  Mark did not appeal this recalculation.  The practical effect of allowing Mark to credit the $47,432 overpayment against future child support payments would be that Pamela would receive only $1,052 monthly in CIB payments and the additional $169 of Mark's monthly child support obligation ($1,221 minus $1,052 equals $169) would be deducted from the $47,432 credit, resulting in Pamela not receiving the additional $169 each month.

negative. The court directed CSSD to remove the credit from Mark's account and to allow only future CIB payments to be credited against the child support obligation in the month the CIB payment is received.

### 1. *Pacana v. State*

Mark contends that "[t]here is potentially a very simple resolution to this appeal." He points to *Pacana v. State*[6] and asserts that both parties and the superior court agreed below that *Pacana* answers the central question in this appeal. He argues that under *Pacana* it has been "settled law in Alaska for at least twenty years that this type of overpayment is recoverable." Mark says we need only look to *Pacana* to decide this appeal, but in the alternative he argues that "persuasive caselaw, public policy, and constitutional principles" support his position.

In *Pacana* we addressed "whether a parent can receive credit for CIB payments made before the parent moves to modify child support."[7] We observed that the majority rule among other states is that "CIB payments made prior to a motion to modify are credited against child support obligations."[8] We adopted the majority rule, concluding that Alaska Civil Rule 90.3(h)(2), which restricts retroactive modification of a child support order, allows "automatic credit against child support arrearage for CIB" without first requiring the party to file a motion to modify.[9] We explained that CIB payments are different than most other nonconforming payments (i.e., voluntary payments such as cash gifts to children) because they are "regular monthly payments and

---

[6] 941 P.2d 1263.

[7] *Id.* at 1264.

[8] *Id.* at 1265.

[9] *Id.* at 1266.

the custodial parent is aware of them," and "they can [therefore] be credited against a child support obligation."[10]

We then addressed whether overpayments — resulting from CIB payments and garnishments of Social Security disability income together totaling more than the parent's monthly child support obligation — could be credited against child support arrearages accrued after the children started receiving the CIB payments but before the garnishments began.[11]  We concluded:

> An overpayment issue is present here.  It is the result of [CSSD's] garnishments rather than any CIB payments that exceed the support order.  After approximately September 1993, [CSSD] was garnishing [obligor's] disability benefits and his permanent fund dividend.  Between the garnished benefits and the CIB payments, [obligor] was effectively paying his children more than $1,000 per month, although the support order awarded only $750.  We conclude that [obligor's] arrearage accruing after September 1993 should be canceled. [Obligor's] overpayments after that date will offset other [post-disability] arrearages.[12]

We also commented in dictum on what happens if the monthly CIB payment alone exceeds the obligor's monthly child support obligation:

> [Obligee] claims that the minority rule is more equitable if monthly CIB payments exceed the awarded child support.  In this circumstance, obligor parents might wish to credit the overpayment amount against a future support obligation or force the custodial parent to repay this amount.  Nonetheless, most courts following the majority rule treat the excess payment during the obligor's disability as a gratuity to

---

[10]    *Id.*

[11]    *Id.* at 1267.

[12]    *Id.*

the children, so that the custodial parent does not owe the obligor.[13]

As explained above Mark argues that we need look only to *Pacana* to decide this appeal in his favor, as he asserts the *Pacana* court determined that "an overpayment resulting from combined 'normal' support payments and CIB payments is *not* to be treated as a gratuity to the child." (Emphasis in original.) Mark's reading misconstrues *Pacana*. In *Pacana* we addressed only whether overpayments resulting from CIB payments plus "normal" support payments can be credited against arrearages. We did not make a sweeping ruling as to whether overpayments resulting from CIB payments plus "normal" support payments are a gratuity. While we chose not to treat the overpayments as a gratuity in *Pacana*, there is reason to distinguish between overpayments offsetting past arrearages, as was at issue in that case, and overpayments serving as a basis for future credit or reimbursement, as is requested in this case. *Pacana* therefore does not resolve the question presented by this appeal.

### 2. Cases from other states

Mark and Pamela cite various out-of-state cases to support their positions on appeal. Mark argues that "the evolving national trend in this area is toward allowing a trial court flexibility and discretion when ruling on support overpayment, rather than constraining it with a more rigid approach that does not allow consideration of case-specific factual and equitable factors." Mark urges us to adopt a discretionary approach that allows the court to consider whether reimbursement or credit for overpayment is warranted. Pamela counters that the majority view favors denying reimbursement and that the recent trend towards reimbursement Mark points to is not as persuasive as he claims, both because some of the cases he cites involve different factual situations and

---

[13]     *Id.* (footnotes omitted).

because some of the cases involve courts interpreting statutes that affirmatively allow reimbursement.

Many of the cases Mark and Pamela cite are not factually analogous to this case, as they involve situations where the obligee parents received retroactive lump-sum CIB payments because the obligor parents were approved for Social Security disability benefits and were paid retroactive benefits.[14] The obligee's receipt of the lump-sum payment effectively duplicated the months of child support the obligor had been paying while the obligor's disability application was pending. These cases are distinguishable because this case does not involve child support payments made while an application was pending. Instead, in this case the obligor was making child support payments while SSA was providing CIB payments and the obligor did not realize that he was overpaying until four years later.

This case is analogous to some out-of-state cases, a number of which support the superior court's decision not to permit reimbursement of duplicative child support and CIB payments. In *In re Marriage of Stephenson & Papineau*[15] the Kansas Supreme Court discussed its prior holding in *Andler v. Andler*.[16] The factual situation in *Andler* was analogous to this case; Harold Andler was making monthly child-support payments while the children were also receiving CIB payments due to his disability.[17] The court explained that Harold "did not have an obligation to make an additional child-

---

[14]     *See Hamilton v. Reynolds*, 5 N.E.3d 1053, 1055 (Ohio App. 2013) (involving retroactive lump-sum payment of benefits that duplicated already paid child support monies); *In re H.J.W. & M.E.W.*, 302 S.W.3d 511, 513 (Tex. App. 2009) (same); *Paulhe v. Riley*, 722 N.W.2d 155, 157-58 (Wis. App. 2006) (same).

[15]     358 P.3d 86, 88-90 (Kan. 2015).

[16]     538 P.2d 649 (Kan. 1975).

[17]     *Stephenson*, 358 P.3d at 88.

support payment each month beyond the [CIB] payment because the [CIB] payment fulfilled his obligation in the same month the child-support obligation became due."[18] The court stated that "[t]he [CIB] payment satisfied the court's child support order, meaning [Harold's] personal child-support payments were duplicative at the time he made them—and thus these additional child-support payments were truly gratuitous."[19] Accordingly, the court in *Andler* did not allow recovery of the duplicative gratuitous payments, and the court in *Stephenson* reaffirmed this holding.[20]

In *Department of Human Services v. Austin* the obligor sought credit against his child support arrearages for voluntary payments he made while his child was also receiving CIB benefits.[21] The Oklahoma Court of Appeals held with little explanation that the obligor "fail[ed] in his burden to prove equity entitles him to *additional credit* by reimbursement for child support payments he voluntarily made during the relevant time period of the child's receipt of [CIB payments]."[22]

In *Wicker v. Hallman* an obligor was overpaying his child support by $200 a month for seven years, the money being directly withheld from his paychecks.[23] The Alabama Court of Appeals explained that its "review of decisions from other jurisdictions indicates that the prevailing rule is that a parent who has voluntarily

---

[18]  *Id.* at 89.

[19]  *Id.*

[20]  *Id.*  However, the Kansas Supreme Court refused to extend the holding to child support payments made during the pendency of a Social Security disability application.  *Id.* at 89-90, 100.

[21]  232 P.3d 936, 938 (Okla. App. 2010).

[22]  *Id.* at 939 (emphasis in original).

[23]  245 So. 3d 627, 628-29 (Ala. App. 2017).

exceeded the amount of payments owed on his or her child-support obligation is not entitled to a credit or setoff against future child-support payments."[24] The father contended that "he did not voluntarily overpay his child-support obligation."[25] He stated that he believed the state was collecting the correct amount from his paychecks.[26] But he also testified that he knew he was supposed to be paying only $900, that $1,100 was being withheld from his checks, and that this went on for seven years.[27] In denying his request for reimbursement, the court explained that "voluntary overpayments made under a mistaken belief as to their legal consequences cannot be used as a credit against future child-support payments."[28]

Some state courts have adopted a position contrary to that of the superior court. In *Rathbone v. Corse* the Vermont Supreme Court allowed reimbursement when the obligor made child-support payments during a period when the child was also receiving CIB payments.[29] The court explained that "[a]llowing reimbursement for payments during the pendency of an application would encourage obligor parents to continue support payments as they await the outcome of their SSDI applications."[30] The court further reasoned that "[t]he availability of reimbursement for these payments denies

---

[24]     *Id.* at 630.

[25]     *Id.* at 632.

[26]     *Id.* at 632-33.

[27]     *Id.* at 633.

[28]     *Id.*

[29]     124 A.3d 476, 482-83 (Vt. 2015).

[30]     *Id.* at 482.

a shirking obligor the ability to use tomorrow's retroactive credit as a justification for not meeting today's obligations."[31]

In *In re Marriage of Allen* the Arizona Court of Appeals addressed whether to apply credit for both a duplicative lump-sum CIB payment and duplicative monthly CIB payments.[32] The court looked to the Arizona Supreme Court Guidelines used to determine the amount of child support appropriate in a given situation based on "all relevant factors."[33] In interpreting those guidelines, the court concluded that the trial court's determination that the obligor should receive credit for duplicative monthly payments was in line with the applicable guideline.[34] The court remanded for the trial court to issue a judgment and order for the obligor's repayment if the trial court made requisite findings based on the consideration of "all relevant factors."[35] Thus the court allowed the trial court discretion in fashioning reimbursement or credit based on applicable guidelines governing child support overpayments, but this result was based on Arizona's Supreme Court Guidelines. We have not adopted similar guidelines for Alaska.

In summary, many of the out-of-state cases cited by the parties are distinguishable from this case because they involved retroactive lump-sum payments that duplicated child-support payments made while a disability application was pending. The reasoning and policy cited in those cases are thus of limited use in deciding this case.

---

[31]     *Id.* at 483.

[32]     386 P.3d 1287, 1291-92 (Ariz. App. 2016).

[33]     *Id.* at 1289 (quoting Ariz. Rev. Stat. § 25-320(D)).

[34]     *Id.* at 1291.

[35]     *Id.* at 1291-92.

Of the factually analogous cases discussed above, we find those in support of the superior court's ruling more persuasive. We agree that voluntary overpayments made while SSA is making CIB payments cannot be used as a credit or setoff against future child support payments and cannot be reimbursed. If a parent has no arrearages and makes duplicative child support payments even after SSA begins making CIB payments, we will treat those duplicative payments as a gratuity. Such overpayments may not be recovered in the future.

### 3. Other Alaska cases

We observe some cases that we previously decided on different grounds also support the general proposition that voluntary overpayments should not be reimbursed or credited against future payments. In *Epperson v. Epperson* we held that the obligor's "past voluntary contributions in excess of his support obligation [did] not constitute good cause for reducing his future child support obligation."[36] And in *Ruppe v. Ruppe* we cited *Epperson* and explained, "Even if [obligor] had paid [obligee] too much during the interim period, it was error to credit any voluntary overpayment against his future obligations."[37] We referenced our previous holding that "it is contrary to the purpose of Civil Rule 90.3 to offset such contributions against future child support payments except in exceptional circumstances."[38]

### 4. Public policy

Mark also argues that "sound public policy benefits result from declining to treat [his] overpayment as a gratuity and rather allowing reimbursement."

---

[36]     835 P.2d 451, 453 (Alaska 1992).

[37]     358 P.3d 1284, 1292 (Alaska 2015).

[38]     *Id.* (quoting *Epperson*, 835 P.2d at 453).

He cites the out-of-state cases involving retroactive lump-sum CIB payments in which courts concluded that it is a perverse consequence "to encourage an obligor to withhold direct support for several years, in order to create an arrearage against which derivative benefits could later be credited, rather expressing a strong preference for continued payment and later reimbursement." Mark's comparison is inapposite. This policy goal is relevant when dealing with retroactive lump-sum CIB payments and the period an obligor might wait for a Social Security disability application to be processed, but is irrelevant when an obligor makes child support payments while the obligee also receives monthly CIB payments that satisfy the obligor's obligation.

Pamela also makes policy arguments for why we should deny credit or reimbursement. Pamela explains that "we should be hesitant to create a . . . rule that strips the money from the child's household after the money has already been provided for the child." She further asserts that "reimbursement could wreak havoc for the custodial household where it is allowed for payments made months or years in the past, when the CIB monies would likely have been long since budgeted and expended." We find Pamela's arguments persuasive.

### 5.    Conclusion

No Alaska statute or case law controls our resolution of this issue, and we recognize that there are valid arguments on both sides. The question comes down to a balancing of competing policies as articulated by out-of-state cases as well as the superior court and parties. We determine that the policies articulated in *In re Marriage of Stephenson & Papineau*[39] and *Wicker v. Hallman*,[40] as well as Pamela's articulated policy argument, are more persuasive, and we conclude that it is more fair to allocate the

---

[39]    358 P.3d 86, 89-90 (Kan. 2015).

[40]    245 So. 3d 627, 628-29 (Ala. App. 2017).

risk of loss to Mark. He was the parent making the overpayments, and he had every opportunity to notify CSSD. And, in agreement with the superior court, we are "further mindful of obvious concern surrounding an obligor parent building up a support credit to then subsequently decline to provide support in reliance on the overpayment, or to demand repayment." Accordingly, we affirm the superior court's order regarding overpayment.

**B.    The Superior Court Did Not Err By Not Allowing Mark Reimbursement Or Credit For 50% Of The Daughter's Health Insurance Premiums.**

Mark also argues that the superior court erred by refusing to order Pamela to reimburse him for his $7,500 overpayment in health insurance premiums for covering the daughter. The superior court ruled that Mark's claim for reimbursement for health insurance premiums was barred by the law against retroactive modification of child support; the court did adjust Mark's future support payments by deducting half the cost of the health insurance he was purchasing. The court explained that because health insurance offsets are part of child support,[41] Rule 90.3(h)(2)'s bar on retroactive modification disallows Mark from receiving retroactive credit for the health insurance premiums he paid.[42] The court found that Mark had not "notified CSSD of his assumption of the child's health insurance cost at the time he commenced it in 2013."

The child support order states:

---

[41]    AS 25.27.900(12)(B)(ii) (" '[S]upport order' includes a judgment, decree, or order . . . for any or all of the following . . . payment of health care costs or maintenance of health insurance.").

[42]    *See* Alaska R. Civ. P. 90.3(h)(2) ("*No Retroactive Modification*. Child support arrearage may not be modified retroactively, except as allowed by AS 25.27.166(d) [disestablishment of paternity]."); *Kyte v. Stallings*, 334 P.3d 697, 699 (Alaska 2014) ("Alaska law prohibits retroactive modification of child support orders; the parent's obligation can be changed only prospectively.").

> If there is no health care coverage for the child and insurance becomes available to a parent at reasonable cost, that parent must purchase the insurance after giving notice to the other parent. The cost of the insurance must be divided between the parents equally unless a different division of the cost is ordered. Without further order of the court, the monthly child support obligation will . . . decrease by 50% of the cost of the insurance if the obligor purchases it, unless otherwise ordered.

It is disputed whether Mark gave Pamela notice of his purchase of health insurance. If Mark did give notice, then his child support obligation automatically decreased by half of what he was paying for the insurance when he started purchasing it; no further court action was necessary. His continued full payment would therefore have been a voluntary overpayment which, as we discussed above, is not subject to reimbursement or credit. The child support order does not address the situation in which Mark purchases insurance without giving notice to Pamela. Notwithstanding, it would create perverse incentives to deny reimbursement or credit if Mark did give notice, but to allow reimbursement or credit if Mark failed to give notice; Mark would receive a preferable outcome for failure to abide by the child support order's notice requirement. Despite the ambiguity of the child support order, the outcome is not dependent on whether Mark gave Pamela notice of the insurance purchase; either way he cannot receive reimbursement or credit. We affirm the superior court's denial of any health insurance premium reimbursement.

## V.    CONCLUSION

We AFFIRM the superior court's order in all respects.